[No. D023269. Fourth Dist., Div. One. Oct. 27, 1997.]

DIANA ZAVALA, Plaintiff and Appellant, v.
JORGE ARCE, Defendant and Respondent.

## COUNSEL

Suppa, Highnote & Lee and Teresa Trucchi for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Marilyn R. Moriarty, James E. Friedhofer and Thomas M. Diachenko for Defendant and Respondent.

## OPINION

**NARES, J.**—Plaintiff Diana Zavala appeals from a summary judgment in favor of defendant Jorge Arce, M.D. (Dr. Arce), her former obstetrician, on her first amended complaint for damages arising from the in utero death of her baby almost three weeks after the delivery due date. Zavala's amended complaint alleged three causes of action, named the father of the child (Gabriel Valdez) as a coplaintiff, and suggested in the title of the pleading that she was suing for wrongful death.[1] However, Zavala's appellate briefs clarify Valdez is not a party to this appeal, she is not suing for wrongful death damages, and her appeal is only directed to the dismissal of her own claim for emotional distress damages based on a "direct victim" theory of liability.

Zavala appeals, contending the summary judgment in favor of Dr. Arce should be reversed because the court erred in ruling as a matter of law she had not stated, and could not state a claim for "direct victim" emotional distress damages. We thus address the issue whether a mother can recover monetary damages under a "direct victim" theory of liability for emotional distress she has suffered as a result of the in utero death of her postterm fetus allegedly caused by the professional negligence of a physician with whom she entered into a physician-patient relationship for care during labor and delivery. Zavala further contends that because the court granted summary judgment solely on the ground she could not state facts sufficient to constitute a cause of action, we may not review de novo the issue of whether the

---

[1]Zavala's first amended complaint alleges causes of action for medical malpractice (first cause of action), negligent infliction of emotional distress based on a bystander theory of liability (second cause of action), and intentional infliction of emotional distress (third cause of action). The title of her amended pleading is "First Amended Complaint for Damages for Medical Malpractice [*Wrongful Death*]; Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress" (italics added).

evidence presented by the parties was sufficient to create a triable issue of material fact.

We agree with Zavala's first contention, and conclude the first cause of action alleged in her amended complaint is sufficient to constitute a professional negligence cause of action under which emotional distress damages are recoverable based on a "direct victim" theory. Because the professional malpractice alleged in this action, if proved by a preponderance of the evidence, would constitute a breach of a duty of care owed to the mother (Zavala) as well as to her postterm fetus, we hold the mother has stated a claim for recovery of "direct victim" emotional distress damages resulting from the breach of the duty. For public policy reasons, however, the mother's recoverable damages do not extend to emotional distress resulting from the loss of her child's affection, society, companionship and love, or other similar loss of filial consortium.

Disagreeing with Zavala's second contention, we review de novo the merits of Dr. Arce's motion for summary judgment. We conclude there are triable issues of material fact whether the medical care Dr. Arce provided to Zavala and her postterm fetus fell below the standard of care applicable to obstetricians under the factual circumstances from which this action arose, and whether any such negligence was a legal cause of the death of the fetus and any emotional distress Zavala may have suffered as a result thereof. Accordingly, we reverse the judgment and remand this matter to the trial court for further proceedings.

## FACTUAL BACKGROUND[2]

On January 21, 1993, when she was approximately 17 weeks into her pregnancy, Zavala became Dr. Arce's patient. Dr. Arce's partner was Dr. Del Aguila. Dr. Arce told Zavala her estimated delivery due date was June 29, 1993.

On July 9, 1993, more than a week after Zavala's due date, Dr. Del Aguila examined her and wrote in her medical chart, "If not deliver [sic] in less than three days, possible induction." On July 12 Dr. Arce examined Zavala, who informed him Dr. Del Aguila was going to induce labor and she was prepared to go to the hospital for that purpose. Dr. Arce told her labor would not be induced at that time because her cervix had not sufficiently dilated.

---

[2]The following factual background is taken primarily from the documents contained in the "Augmented Record on Appeal" filed by Dr. Arce. In his unopposed motion to augment the appellate record, which we granted, Dr. Arce indicated the subject documents "constitute the exhibits lodged in the Superior Court regarding respondent's motion for summary judgment . . . ."

Dr. Arce wrote in Zavala's medical chart, "Plan sono[gram] to rule out oligohydramnios."[3]

When Zavala returned the next day, July 13, Dr. Arce performed a sonogram. Although Dr. Arce testified during his deposition that the sonogram showed an amniotic fluid index of eight, Zavala testified during her deposition that Dr. Arce told her an eight was normal and although she had a five, indicating a low amniotic fluid level, there was no problem.

Dr. Arce next saw Zavala on July 15, at which time he told her he would induce labor and delivery of her baby on Saturday, July 17. Following Dr. Arce's instructions, Zavala admitted herself into the hospital at 5 p.m. on July 17. She had felt her baby move in the morning, and believed he was still alive when she arrived at the hospital. Dr. Arce arrived and ordered a sonogram, which showed Zavala had oligohydramnios with an amniotic fluid index in the "low millimeters" and confirmed the baby had died. Zavala believed her baby was alive and healthy until she learned from Dr. Arce her baby had died. Dr. Milgram replaced Dr. Arce as Zavala's obstetrician.

Zavala spent the night of July 17 in the hospital with the deceased fetus still inside her womb, and the stillbirth delivery took place the next day after labor was induced. After consulting with Dr. Milgram, Dr. Arce determined the cause of the fetal death was an abrupt umbilical cord compression.

PROCEDURAL BACKGROUND

A. *Zavala's Operative First Amended Complaint*

As we have discussed, Zavala's operative first amended complaint alleges three causes of action on her own behalf: medical malpractice (first cause of action), negligent infliction of emotional distress based on a bystander theory of liability (second cause of action), and intentional infliction of emotional distress (third cause of action). We note again although the title of Zavala's amended pleading suggests her malpractice claim is based on a wrongful death theory of liability, her appellate reply brief clarifies she is not suing for wrongful death damages and she concedes her only potentially viable cause of action is her "direct victim" claim for emotional distress damages set forth in her first cause of action for medical malpractice. In her briefs Zavala also admits the father of her deceased baby (Valdez), who is named as a coplaintiff in her amended pleading, is no longer a party to this action. We thus limit our remaining discussion of the procedural history of this case to those matters affecting Zavala's purported "direct victim" claim for emotional distress damages.

---

[3]The term "oligohydramnios" means a low volume of amniotic fluid.

With respect to her first cause of action for medical malpractice, Zavala alleged in paragraph 8 of her amended complaint that she had a patient-physician relationship with Dr. Arce for medical care for herself and her fetus during her pregnancy. In paragraph 9, she alleged Dr. Arce negligently breached a duty of care he owed to her by negligently causing the death of her unborn child. With respect to the elements of damages and causation, Zavala alleged in paragraph 10 that as a result of Dr. Arce's negligence she "suffered injury to her health, strength, and activities all of which injuries have caused, and continue to cause, [her] great mental, physical, and nervous pain and suffering."

### B. Dr. Arce's Motion for Summary Judgment[4]

Dr. Arce filed a motion for summary judgment, asserting there was no merit to Zavala's action as a matter of law because she had not pleaded a claim for emotional distress under a "direct victim" theory. Dr. Arce also argued that Zavala's first cause of action was a wrongful death claim based on the death of a fetus; that Zavala admitted the fetus had died prior to delivery; and thus to allow Zavala to recover damages on a "direct victim" theory would impermissibly allow a recovery for the death of a fetus contrary to the holding in *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 580 [139 Cal.Rptr. 97, 565 P.2d 122], that a wrongful death action may not be maintained for the death of an unborn child. Dr. Arce further asserted he did not owe Zavala a duty of care, and Zavala was unable to present evidence creating a triable issue of material fact as to a breach of any standard of care and causation because she could not submit an adequate expert witness declaration.

Zavala opposed the motion for summary judgment and submitted the declaration of her expert witness, Dr. Robert Trifunovic, who stated he had reviewed the medical charts and records, as well as the various deposition transcripts, and had concluded the care and treatment Dr. Arce had provided to Zavala fell below the standard of care. Dr. Trifunovic also stated it was his opinion that "labor should have been induced when requested (prior to the fetal demise)."

In her written opposition, Zavala argued she had alleged a viable wrongful death claim notwithstanding the California Supreme Court's holding in *Justus* v. *Atchison, supra*, 19 Cal.3d at page 580, that a wrongful death action

---

[4]Because Zavala asserts her first cause of action for medical malpractice, through which she is seeking "direct victim" emotional distress damages, is her only viable cause of action, we discuss Dr. Arce's summary judgment motion only to the extent it affects Zavala's malpractice cause of action.

may not be maintained for the death of an unborn child. Quoting from *Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1076 [9 Cal.Rptr.2d 615, 831 P.2d 1197] ("Any negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother, therefore, breaches a duty owed directly to the mother"), Zavala also argued she had properly pleaded a "direct victim" claim for emotional distress damages.

### C. *The Court's Summary Judgment Ruling in Favor of Dr. Arce*

On September 30, 1994, the court issued a telephonic ruling granting Dr. Arce's motion for summary judgment.[5] The ruling, however, was silent with respect to Zavala's claim for "direct victim" emotional distress damages. The court construed the first cause of action for medical malpractice to be a wrongful death claim which was barred as a matter of law by the California Supreme Court's decision in *Justus* v. *Atchison, supra*, 19 Cal.3d at page 580 (holding a wrongful death action may not be maintained for the death of an unborn child).

On October 14, 1994, the court entertained oral argument with respect to its telephonic ruling granting Dr. Arce's summary judgment motion. Zavala's counsel argued Zavala's "direct victim" claim for emotional distress as alleged in the first cause of action for medical malpractice was permitted under the decisions in *Burgess* v. *Superior Court, supra*, 2 Cal.4th 1064, and *Johnson* v. *Superior Court* (1981) 123 Cal.App.3d 1002 [177 Cal.Rptr. 63].

---

[5]The record before us does not contain a copy of a September 30, 1994, telephonic ruling minute order. A transcription of the telephonic ruling is attached to, and incorporated by reference into, an undated minute order titled "Ex Parte Minute Entry on Motion Under Submission" which was apparently served on all counsel by facsimile transmission on October 24, 1994. The portion of the transcription relating to the summary judgment motion states in part:

"Defendant's motion for summary judgment on Plaintiffs' First Amended Complaint is granted.

"Regarding Plaintiffs' first cause of action, wrongful death, Plaintiffs[] concede that Paulo died in utero prior to delivery . . . and the California Supreme Court (*Justus* v. *Atchison* (1977) 19 Cal[.]3d 564, 580) does not recognize a wrongful death [cause of action] unless there is a live birth.

"As for Plaintiff[s'] second cause of action, bystander negligent infliction of mental distress, Plaintiffs' [d]eposition admissions . . . show they were unaware of any injury to the fetus until Defendant told them that death had resulted in utero. (*Thing* v. *La Chusa* (1989) 48 Cal[.]3d 644, 667-668 [257 Cal.Rptr. 865, 771 P.2d 814].)

"Finally, with respect to Plaintiffs' third cause of action, intentional infliction of mental distress, Plaintiffs' Opposition Memo of Points and Authorities . . . concedes that a death certificate was not needed in order to perform an autopsy, Plaintiffs fail to provide evidence that they told Defendant that a death certificate was required to transfer the stillborn body to Mexico, and Plaintiffs fail to provide evidence that they wanted to transfer the stillborn body back to Mexico."

Dr. Arce's counsel argued the *Burgess* and *Johnson* cases were distinguishable, Zavala had failed to plead a "direct victim" emotional distress claim, and she could not recover on a "direct victim" theory because *Burgess* allows such recovery only when the baby is born alive after suffering an injury as a result of professional negligence during delivery.

The court took the matter under submission, and later issued an undated minute order, which was apparently served on counsel by facsimile transmission on October 24, 1994, confirming the telephonic ruling granting Dr. Arce's motion for summary judgment. Judgment was entered in favor of Dr. Arce.

### D. *Zavala's Unsuccessful Motion for a New Trial and Her Appeal*

Zavala filed a motion for new trial under Code of Civil Procedure[6] section 657, subdivision 7, on the ground the court's granting of summary judgment in favor of Dr. Arce was an error in law which materially affected her rights. This motion was based on Zavala's assertion she had properly stated a claim for emotional distress as a "direct victim" under *Burgess* v. *Superior Court*, *supra*, 2 Cal.4th 1064.

In a final telephonic ruling issued on March 3, 1995, without oral argument, the court denied Zavala's motion for a new trial. The court reasoned the *Burgess* case was distinguishable because it involved a live birth, Zavala had not alleged a claim for negligent delivery, and there was no "awareness of injury by plaintiff Diana Zavala until after the death of the fetus." Zavala timely appealed.[7]

---

[6]All subsequent statutory references are to the Code of Civil Procedure.

[7]Zavala purports to appeal both from the order confirming the telephonic ruling granting Dr. Arce's motion for summary judgment, and from the order denying her motion for a new trial. An order granting a motion for summary judgment is not an appealable order or judgment. (*Stoltz* v. *Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1816 [31 Cal.Rptr.2d 229].) Section 437c, subdivision (*l*), provides in part that "[a] summary judgment entered under this section is an appealable judgment . . . ." In the interests of justice and to avoid delay, we construe Zavala's appeal as having been taken from the summary judgment rather than from the order. (*Arendell* v. *Auto Parts Club, Inc.* (1994) 29 Cal.App.4th 1261, 1264, fn. 1 [35 Cal.Rptr.2d 83].)

Similarly, an order denying a new trial is not directly appealable. (§ 904.1; *Gallup* v. *Board of Trustees* (1996) 41 Cal.App.4th 1571, 1573, fn. 1 [49 Cal.Rptr.2d 289].) Such an order is reviewable on appeal from the underlying judgment. (*Leaf* v. *City of San Mateo* (1984) 150 Cal.App.3d 1184, 1187, fn. 2 [198 Cal.Rptr. 447], overruled on other grounds in *Trope* v. *Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Appellate courts have

## Standard of Review

 In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court.[8] (*Branco* v. *Kearny Moto Park, Inc., supra*, 37 Cal.App.4th at p. 189.) In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment. (*Lopez* v. *University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122 [63 Cal.Rptr.2d 359].)

Under section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Ibid.*; *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Because the granting of a summary judgment motion under section 437c involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. (*Ranchwood Communities Limited Partnership* v. *Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1408 [57 Cal.Rptr.2d 386].)

 We apply the same three-step analysis required of the trial court in ruling on a motion for summary judgment. (*Ranchwood Communities Limited*

---

discretion to treat an appeal from an order denying a new trial as an appeal from the judgment. (*Tillery* v. *Richland* (1984) 158 Cal.App.3d 957, 962 [205 Cal.Rptr. 191].)

Because Zavala's new trial motion, like her opposition to the summary judgment motion, addressed her right to recover "direct victim" emotional distress damages, and this claim is at the heart of Zavala's appeal, we treat this appeal as an appeal from the summary judgment.

[8]We have reevaluated and reconsidered our prior holding in *Cox* v. *County of San Diego* (1991) 233 Cal.App.3d 300, 306 [284 Cal.Rptr. 266], that ". . . a judgment of dismissal following an order granting summary judgment will not be reversed absent an abuse of the trial court's discretion. [Citation.]" We have already implicitly abandoned our holding in *Cox* by reviewing grants of summary judgment under the independent (de novo) review standard only. (See, e.g., *Branco* v. *Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) We now explicitly reject the application of the abuse of discretion standard in evaluating the propriety of a grant of summary judgment. Although the pre-1973 version of section 437c (California's summary judgment statute) permitted summary judgment "in the discretion of the court," the Legislature revised this section in 1973 to make the *granting* of a motion for summary judgment mandatory if there was no triable issue of material fact. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511 [285 Cal.Rptr. 385].) It was the intent of the Legislature in revising section 437c to ". . . abrogate any real discretion the trial court had in *granting* the motion. [Citation.]" (233 Cal.App.3d at p. 1512, italics added.) The 1973 revision, with certain subsequent modifications not relevant here, still governs the grant of summary judgment. Subdivision (c) of section 437c provides in part that "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Partnership* v. *Jim Beat Construction Co., supra*, 49 Cal.App.4th at p. 1408.) First, we identify the issues framed by the pleadings because the court's sole function on a motion for summary judgment is to determine from the submitted evidence whether there is a "triable issue as to any material fact" (§ 437c, subd. (c)), and to be "material" a fact must relate to some claim or defense *in issue* under the pleadings (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 3 (The Rutter Group 1997) ¶¶ 10:270 to 10:271).

Second, we determine whether the moving party has met its statutory burden of proof under either (1) subdivision (o)(1) of section 437c if the plaintiff or cross-complainant is the moving party, in which case he or she must produce admissible evidence of ". . . each element of the cause of action entitling the party to judgment on that cause of action. . . ;"[9] or (2) under subdivision (o)(2) of section 437c if the defendant or cross-defendant is the moving party, in which case he or she must produce admissible evidence showing that ". . . one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. . . ."[10]

Finally, if the moving party has met its statutory burden of proof and the summary judgment motion prima facie justifies a judgment, we determine whether the opposing party has met its burden of demonstrating the existence of a triable issue of one or more material facts as to that cause of action or a defense thereto. (§ 437c, subd. (o)(1-2).) In making this determination, we strictly construe the evidence of the moving party and liberally construe that of the opponent, and any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Molko* v. *Holy Spirit Assn., supra*, 46 Cal.3d at p. 1107; *Branco* v. *Kearny Moto Park, Inc., supra*, 37 Cal.App.4th at p. 189.)

---

[9] Subdivision (o)(1) of section 437c provides in part:
"(o) For purposes of motions for summary judgment . . . :
"(1) A plaintiff or cross-complainant has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. . . ."
[10] Subdivision (o)(2) of section 437c provides in part:
"(o) For purposes of motions for summary judgment . . . :
". . . . . . . . . . . . . . . . . . . . .
"(2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. . . ."

## DISCUSSION

### I

### *Dr. Arce Owed a Duty of Care to Zavala*

 Zavala contends the summary judgment in favor of Dr. Arce should be reversed because the court erred in ruling as a matter of law she had not, and could not, state a claim for emotional distress damages under a "direct victim" theory of liability.[11] On the facts of this case, the issue presented is whether a mother can recover monetary damages under a "direct victim" theory of liability for emotional distress she has suffered as a result of the in utero death of her postterm fetus caused by the professional negligence of a physician with whom she entered into a physician-patient relationship for care during labor and delivery. The determination of this issue, however, necessarily involves a determination whether Dr. Arce owed a duty of care to Zavala, the negligent breach of which would allow Zavala to recover emotional distress damages resulting from such breach.

### A. *Contentions of the Parties*

Citing *Burgess* v. *Superior Court, supra,* 2 Cal.4th 1064, Zavala contends Dr. Arce owed her a duty of care to protect the health and well-being of her unborn child. Implicit in her argument is the contention Dr. Arce owed her a duty of care to avoid causing her to suffer emotional distress from a negligently inflicted injury to her unborn child.

Distinguishing the *Burgess* case on the ground it involved a *live* birth and the mother was allegedly aware that her baby was in jeopardy during the delivery, Dr. Arce contends an obstetrician does not owe a duty of care to an expectant mother regarding emotional distress she suffers when her fetus is stillborn as a result of the obstetrician's negligence. Dr. Arce cites *Justus* v. *Atchison, supra,* 19 Cal.3d 564, for the proposition that "California law does not permit the grieving parents of a stillborn child to recover emotional distress damages, even if liability somehow could be proven." He further asserts "[t]he sound public policy of not expanding tort liability to cover emotional distress from stillborn births is apparent."

---

[11]We note the court did not expressly state in the telephonic ruling, at oral argument, or in the formal order granting Dr. Arce's summary judgment motion that Zavala had not stated and could not state a claim for emotional distress damages under a "direct victim" theory of liability. In her written opposition to the motion, however, Zavala cited *Burgess* v. *Superior Court, supra,* 2 Cal.4th at page 1076, in support of her argument she had properly pleaded a "direct victim" claim for emotional distress damages. During oral argument, Dr. Arce's counsel argued that Zavala had failed to plead a "direct victim" emotional distress claim, and existing case law did permit her to recover on a "direct victim" theory.

### B. *Dr. Arce Owed Zavala a Duty of Care as a Matter of Law Under the Burgess and Johnson Decisions*

 We begin our analysis by recognizing it is well established that " '[t]he *negligent* causing of emotional distress is not an independent tort but the tort of *negligence* . . . .' [Citation.] 'The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' [Citation.]" (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278], italics in the original; accord, *Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1072.)

 "Direct victim" emotional distress cases, as distinguished from "bystander" cases, are those in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is " 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' [Citation.]" (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1073.) In these cases, the limits on recovery in "bystander" cases as set forth in *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814], have no direct application, and well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1073.) The term "direct victim" is defined by the principle that a cause of action to recover damages for negligently inflicted emotional distress will lie, notwithstanding the criteria imposed upon recovery by bystanders, in cases where a duty arising from a preexisting relationship is negligently breached. (*Id.* at p. 1074.)

### 1. *Burgess v. Superior Court*

Our Supreme Court has held in a factually similar case that when an obstetrician and a pregnant woman enter into a physician-patient relationship ". . . the physician owes a duty to the pregnant woman with respect to the medical treatment provided to her fetus. Any negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother, therefore, breaches a duty owed directly to the mother." (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1076.) Because Dr. Arce contends *Burgess* is factually distinguishable, and the court below agreed with this contention in granting summary judgment in his favor, we further examine the *Burgess* decision.

In *Burgess,* a mother sued her obstetrician for negligently inflicted emotional distress after her baby suffered severe brain and nervous system

damage during delivery. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at pp. 1069-1070.) The undisputed facts established that shortly after the obstetrician artificially ruptured the mother's membranes, the mother heard him yell to the nurse: "Emergency, prolapsed cord." Approximately 21 minutes elapsed between the time the obstetrician diagnosed the cord prolapse and the time the mother was taken to emergency surgery for a cesarean section delivery of the baby. (*Id.* at p. 1070.) Although the baby was born alive, he died during the litigation allegedly as a result of his injuries. (*Ibid.*)

The mother in *Burgess* brought a medical malpractice action against the obstetrician alleging negligence in the delivery of her child. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1070.) The obstetrician brought a motion requesting summary adjudication that the mother was not entitled to recover damages for emotional distress. (*Id.* at p. 1071.) In support of his motion, the obstetrician argued the mother had not contemporaneously observed her child's injury as required by the decision in *Thing* v. *La Chusa, supra,* 48 Cal.3d 644, for recovery in a "bystander" situation, and she was not a direct victim of his alleged negligence under *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1071.) Relying principally on *Thing,* the trial court granted the motion. The Court of Appeal granted the mother's petition for a writ of mandate to vacate the trial court's order. (*Ibid.*)

The Supreme Court in *Burgess* modified the Court of Appeal judgment to direct the trial court to reverse its order of summary adjudication, and held that although public policy precludes parents from recovering damages for loss of filial consortium, the mother was not barred from recovering damages as a "direct victim" for emotional distress "arising from the 'abnormal event' of participating in a negligent delivery and reacting to the tragic outcome with fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, physical pain, or other similar distress." (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1085.)

 Here we are presented, as was the California Supreme Court in *Burgess,* with a "traditional" plaintiff who has alleged a professional negligence cause of action against her former obstetrician for recovery of emotional distress damages caused by the obstetrician's negligence during the plaintiff's pregnancy resulting in physical injury to herself and to her in utero child. In paragraph 8 of her first amended complaint, Zavala alleges in connection with her first cause of action for medical malpractice that she had a patient-physician relationship with Dr. Arce for medical care for herself

and her fetus during her pregnancy.[12] Although her medical malpractice cause of action is pleaded rather generally, her written opposition to Dr. Arce's motion for summary judgment and her appellate opening brief clearly show she alleges the death of her baby and her resultant emotional distress were caused by Dr. Arce's negligent delay in inducing labor and delivery at a time when the standard of care required induction due to her postterm, low amniotic fluid pregnancy.

We reject Dr. Arce's contention that the *Burgess* case is inapposite because it involved a *live* birth. The fact that the baby in *Burgess* survived the injuries caused by the obstetric negligence during delivery was immaterial to the determination of whether the obstetrician owed a duty of care to the mother. The Supreme Court in *Burgess* reasoned that ". . . the obstetrician and the pregnant woman [who] enter into a physician-patient relationship . . . understand that the physician owes a duty to the pregnant woman with respect to the medical treatment provided to her fetus," and "[a]ny negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother, therefore, breaches a duty owed directly to the mother." (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at p. 1076.)

Citing with approval the decision in *Johnson* v. *Superior Court, supra*, 123 Cal.App.3d 1002 (see discussion, *post*), the Supreme Court in *Burgess* also explained that the courts in California had already recognized a mother's right to recover for emotional distress she has suffered as a result of the negligently caused stillbirth of her fetus. (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at pp. 1073, 1078.) Noting that during pregnancy the mother and child are a unique physical unit and the welfare of each is intertwined and inseparable, the court quoted from the opinion in *Johnson* v. *Superior Court, supra*, 123 Cal.App.3d at page 1007: " 'It is . . . patently clear that a mother forms a sufficiently close relationship with her fetus during pregnancy so that its stillbirth [or injury] will foreseeably cause her severe emotional distress. Where the stillbirth [or injury] results from medical malpractice rather than from natural and unavoidable causes the loss is all the more poignant and should be legally redressable.' " (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at p. 1080.)

We also reject Dr. Arce's contention that the *Burgess* case is inapposite in that it involved a mother who was allegedly aware that her baby was in

---

[12]Paragraph 8 states in part: "8. During a course of treatment Plaintiff employed Defendant JORGE ARCE, M.D. . . . to provide medical treatment and care during the time period of DIANA ZAVALA's pregnancy. Pursuant to this employment Defendant rendered professional services in the diagnosis, treatment, and care of Plaintiff DIANA ZAVALA for her condition, protection, and for the protection of the [P]laintiff's unborn child, Paulo Valdez."

jeopardy during the delivery. As we have explained, the limits on recovery applicable to "bystander" cases set forth in *Thing* v. *La Chusa, supra,* 48 Cal.3d at page 647—such as the requirement that the "bystander" plaintiff must have been ". . . present at the scene of the injury-producing event at the time it occur[red] and [was] then aware that it [was] causing injury to the victim . . . ."—have no direct application in "direct victim" cases such as the action at bar, and well-settled principles of negligence are invoked in such cases to determine whether all elements of a cause of action, including duty, are present in a given case. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1073.)

### 2. *Johnson v. Superior Court*

Because the Supreme Court in *Burgess* relied on the decision in *Johnson* v. *Superior Court, supra,* 123 Cal.App.3d 1002, we now examine the *Johnson* case.

In *Johnson,* a mother brought an action against a hospital alleging a cause of action for medical malpractice to recover for her own personal injuries, and a separate "cause of action" for "bystander" negligent infliction of emotional distress, after her baby died in utero of meconium aspiration while the mother was a maternity patient. (*Johnson* v. *Superior Court, supra,* 123 Cal.App.3d at p. 1004.) The mother alleged she was negligently permitted to remain in labor for over 24 hours " 'with ruptured membranes,' " that she " 'felt and perceived her then unborn viable fetus die within her body,' " and as a result of the sensory perception of the death of the fetus she suffered profound shock and emotional trauma. (*Ibid.*)

The trial court sustained without leave to amend the hospital's demurrer to the mother's purported "bystander" cause of action. (*Johnson* v. *Superior Court, supra,* 123 Cal.App.3d at p. 1004.) Reasoning that ". . . the sensory perception of the fetus' death and the emotional distress which it causes are aspects of the mother's cause of action for personal injuries which enhance her measure of damages," the Court of Appeal held the trial court did not err in sustaining the demurrer to the "bystander" cause of action, but issued a peremptory writ directing the trial court to permit the mother to amend her malpractice cause of action "to include a claim for damages for the emotional distress suffered as a result of the sensory perception of the death of her fetus . . . ." (*Id.* at p. 1007.)

The importance of the *Johnson* decision thus lies in its recognition of the right of a mother to recover for emotional distress resulting from the

negligently caused stillbirth of her fetus.[13] The holding in *Johnson* strongly supports Zavala's contention that Dr. Arce owed her a duty of care. The fact that the mother in *Johnson* alleged her emotional distress resulted from "sensory perception" of the death of her fetus was immaterial to the issues of whether the hospital owed the mother a duty of care, and whether the mother could recover for negligently inflicted emotional distress. As we have discussed, the *Johnson* court stated the mother's sensory perception of her fetus's death was merely an "aspect" of the mother's cause of action for personal injuries which "enhance[d] her measure of damages." (*Johnson* v. *Superior Court, supra,* 123 Cal.App.3d at p. 1007.)

### 3. *Justus* v. *Atchison*

Dr. Arce cites *Justus* v. *Atchison, supra,* 19 Cal.3d 564, for the proposition that "California law does not permit the grieving parents of a stillborn child to recover emotional distress damages, even if liability somehow could be proven." Dr. Arce's reliance on *Justus* is misplaced.

*Justus* v. *Atchison* involved two factually similar actions for medical malpractice and wrongful death, each of which arose from the stillbirth of a fetus allegedly caused by negligent obstetrical care. (*Justus* v. *Atchison, supra,* 19 Cal.3d at pp. 568-569.) The Supreme Court in *Justus* held that a fetus is not a "person" within the meaning of the California wrongful death statute (former § 377, repealed in 1992 and restated in § 377.60 et seq. without substantive change), which authorizes a cause of action for the wrongful death of a "person," and thus a wrongful death action may not be maintained for the death of an unborn child. (*Justus* v. *Atchison, supra,* 19 Cal.3d at p. 580, overruled on other grounds in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) The Supreme Court noted that in each case the mother asserted a personal injury cause of action seeking damages for injuries personally suffered by her in the negligent delivery. (19 Cal.3d at p. 567, fn. 1.) It is significant that the Supreme Court's decision in *Justus* did not affect these personal injury claims asserted by the mothers.

### 4. *Dr. Arce Owed a Duty of Care to Zavala, Who May Maintain a "Direct Victim" Claim for Emotional Distress*

Because Zavala has properly alleged she had a preexisting patient-physician relationship with Dr. Arce for medical care for herself and her fetus during her pregnancy, we hold Dr. Arce owed a duty of care to Zavala with

---

[13]We note Dr. Arce's respondent's brief is silent with respect to the *Johnson* case and the Supreme Court's reliance on *Johnson* in its *Burgess* decision.

respect to the medical treatment he provided to her and her unborn child from the moment she became Dr. Arce's patient to the time she terminated her patient-physician relationship with him on July 17, 1993, following the confirmation of the in utero death of her child on that date. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1076.)

We further hold a mother can recover monetary damages under a "direct victim" theory of liability for emotional distress she has suffered as a result of the in utero death of her postterm fetus caused by the professional negligence of a physician with whom she entered into a physician-patient relationship for care during labor and delivery. Zavala may thus maintain a properly pleaded claim for emotional distress under a "direct victim" theory.

II

*The First Cause of Action for Medical Malpractice as Alleged in Zavala's First Amended Complaint Is Sufficient to Constitute a Cause of Action for Professional Negligence Under Which Zavala May Seek Recovery of "Direct Victim" Emotional Distress Damages*

Zavala contends the court erred in ruling as a matter of law she had not stated, and could not state a cause of action for emotional distress damages under a "direct victim" theory. We agree.

As we have discussed, a claim for negligently inflicted emotional distress is not an independent tort, but the tort of negligence, and the traditional elements of duty, breach of duty, causation, and damages apply. (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d at p. 588; accord, *Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1072.)

Here, Zavala's first cause of action for medical malpractice sounds in negligence, and she has sufficiently alleged the essential elements of a professional negligence cause of action, including her claim for "direct victim" emotional distress as an element of damages. In paragraph 8 of her first amended complaint Zavala properly alleges she had a patient-physician relationship with Dr. Arce for medical care for herself and her fetus during her pregnancy: "8. During a course of treatment Plaintiff employed Defendant JORGE ARCE, M.D . . . . to provide medical treatment and care during the time period of DIANA ZAVALA's pregnancy. Pursuant to this employment Defendant rendered professional services in the diagnosis, treatment, and care of Plaintiff DIANA ZAVALA for her condition, protection, and for the protection of the [P]laintiff's unborn child, Paulo Valdez." We have already concluded as a matter of law that Dr. Arce owed a duty of care to Zavala

with respect to the medical treatment he provided to her and her unborn child from the moment she became Dr. Arce's patient to the time she terminated her patient-physician relationship with him on July 17, 1993.

In paragraph 9 of her amended pleading, Zavala properly alleges Dr. Arce negligently breached a duty of care he owed to her, and thereby negligently caused the death of her unborn child: "9. From then and after the time of the employment, Defendant[] . . . so negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing, treating, supervising, and caring for Plaintiff DIANA ZAVALA that said negligence caused the death of the [P]laintiff['s] unborn child Paulo Valdez on or about July 17, 1993. At the time of the death of Paulo Valdez, DIANA ZAVALA was two weeks and four days overdue for her anticipated delivery date."

With respect to the elements of damages and causation, Zavala alleges in paragraph 10 that as a result of Dr. Arce's negligence she "suffered injury to her health, strength, and activities all of which injuries have caused, and continue to cause, [her] great mental, physical, and nervous pain and suffering." The allegations in paragraphs 8 through 10 are sufficient to constitute a cause of action for professional negligence and a related "direct victim" claim for emotional distress.

### III

*Summary Judgment Must Be Reversed Because Zavala Has Met Her Burden of Showing There Are Triable Issues of Material Fact*

Zavala next contends that because the court granted summary judgment solely on the ground she could not state facts sufficient to constitute a cause of action, we may not review de novo the issue of whether the evidence presented by the parties was sufficient to create a triable issue of material fact. We disagree with this unsupported contention, and review de novo the merits of Dr. Arce's motion for summary judgment. (*Branco v. Kearny Moto Park, Inc., supra,* 37 Cal.App.4th at p. 189.)

Zavala does not dispute that Dr. Arce met his statutory burden of proof under subdivision (o)(2) of section 437c of producing admissible evidence showing that ". . . one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. . . ." We note that Dr. Arce submitted the declaration of his medical expert, Thomas Moore, M.D., who is a board-certified obstetrician. Dr. Moore stated he had reviewed the medical records and it was his opinion that Dr. Arce's care and treatment of Zavala was appropriate

and well within the standard of care. Dr. Moore's declaration is prima facie evidence that is sufficient to negate the element of breach of duty in Zavala's professional negligence cause of action. The burden of proof shifted to Zavala to show that a triable issue of one or more material facts exists as to that cause of action. (§ 437c, subd. (o)(2).)

In her written opposition to Dr. Arce's motion for summary judgment, Zavala submitted the declaration of her expert witness, Robert Trifunovic, M.D., who stated he is a board-certified obstetrician. Dr. Trifunovic stated he had reviewed the medical charts and records, as well as the various deposition transcripts, and had concluded the care and treatment Dr. Arce had provided to Zavala fell below the standard of care. Dr. Trifunovic also stated it was his opinion that "labor should have been induced when requested (prior to the fetal demise)."

Dr. Arce asserts Dr. Trifunovic's declaration is insufficient to create a triable issue of material fact with respect to the element of causation because he did not state an opinion as to the cause of death of the fetus, nor did he opine that Zavala remained in a state of pregnancy longer than the standard of care would dictate. We disagree.

In determining whether Zavala as the party opposing the summary judgment motion has met her burden of demonstrating the existence of a triable issue of one or more material facts as to her professional negligence cause of action, we must strictly construe the evidence of Dr. Arce, who is the moving party, and liberally construe that of Zavala, who is the opposing party. (*Branco* v. *Kearny Moto Park, Inc.*, *supra*, 37 Cal.App.4th at p. 189.) We must resolve any doubts as to the propriety of granting the motion in favor of Zavala, the party opposing the motion. (*Ibid.*)

Liberally construing the expert witness declaration of Dr. Trifunovic and resolving any doubts as to the propriety of granting the motion in favor of Zavala, we conclude the declaration is sufficient to create a triable issue of material fact with respect to the issue of causation. If the trier of fact agrees with Dr. Trifunovic's expert opinion that Dr. Arce was negligent in failing to induce labor and delivery of Zavala's postterm fetus earlier while the fetus was still alive, we believe there is sufficient additional evidence from which the trier of fact could reasonably find that but for such negligence the baby would not have died, and Zavala would not have suffered emotional distress.

Dr. Arce testified during his deposition that he saw Zavala on July 13, 1993, and performed a sonogram. Although Dr. Arce also testified the

sonogram showed an amniotic fluid index of eight, Zavala testified during her deposition that Dr. Arce told her an eight was normal and although she had a five, indicating a low amniotic fluid level, there was no problem. Zavala stated she had felt the fetus move during the morning of July 17, the day the fetus died. Dr. Arce testified that when he arrived at the hospital later that day he ordered a sonogram, which showed Zavala had oligohydramnios with an amniotic fluid index in the "low millimeters" and confirmed the baby had died. Dr. Arce also testified he determined the cause of the fetal death was an abrupt umbilical cord compression.

We believe this evidence is sufficient to create a reasonable doubt as to the propriety of granting summary judgment in favor of Dr. Arce. We are mandated to resolve this doubt in favor of Zavala as the party opposing the motion for summary judgment. (*Branco* v. *Kearny Moto Park, Inc., supra*, 37 Cal.App.4th at p. 189.)

We conclude Zavala has met her statutory burden of showing there are triable issues of material fact whether the medical care Dr. Arce provided to her and her postterm fetus fell below the standard of care applicable to obstetricians under the factual circumstances from which this action arose, and whether any such negligence was a legal cause of the death of the fetus and any emotional distress Zavala may have suffered as a result thereof. Accordingly, the summary judgment in favor of Dr. Arce must be reversed.

IV

*For Public Policy Reasons Zavala May Not Recover Damages for Loss of Filial Consortium*

Although we hold Zavala has stated a claim for recovery of "direct victim" emotional distress damages resulting from the breach of the duty and there are triable issues of material fact, for reasons of public policy expressed by the Supreme Court in *Burgess* v. *Superior Court, supra*, 2 Cal.4th at pages 1084-1085, any such recovery by Zavala is limited as a matter of law. To the extent Zavala's emotional distress arose from the "abnormal event" of participating in a negligent delivery and reacting to the unexpected outcome of her pregnancy, she may recover damages for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, physical pain, or other similar distress resulting from Dr. Arce's professional negligence, if any. (*Ibid.*)

However, for public policy reasons parents in California may not recover for loss of filial consortium.[14] (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1084, citing *Baxter* v. *Superior Court, supra,* 19 Cal.3d 461, 464.) Zavala's recovery may not include damages for emotional distress arising from loss of her child's affection, society, companionship and love, or other similar loss of filial consortium. (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1085.)

DISPOSITION

We reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion. Zavala shall recover her costs on appeal from Dr. Arce.

Huffman, Acting P. J., and Haller, J., concurred.

---

[14]The public policy considerations militating against recognition of a parental cause of action for loss of filial consortium include "[t]he intangible character of the loss, which can never really be compensated by money damages; the difficulty of measuring damages; [and] the dangers of double recovery of multiple claims and of extensive liability . . . ." (*Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 464 [138 Cal.Rptr. 315, 563 P.2d 871].)