Filed 3/20/13  Ramirez v. Long Beach Mem. Med. Center CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HERMINIA RAMIREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LONG BEACH MEMORIAL MEDICAL CENTER, <br><br> Defendant and Respondent. | B239125 <br><br> (Los Angeles County <br> Super. Ct. No. NC051507) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Roy L. Paul, Judge.  Reversed.

Law Offices of Philip P. DeLuca, and Philip P. DeLuca for Plaintiffs and Appellants.

Dummit, Briegleb & Trapp, Darren W. Dummit and Craig S. Dummit for Defendant and Respondent.

_____

This appeal challenges a summary judgment in a wrongful death action based on alleged medical malpractice in treating a gunshot victim at Long Beach Memorial Medical Center ("the hospital"). The trial court found the hospital immunized itself against respondeat superior liability for any malpractice by the treating physicians by having the patient's mother sign a printed admission form which included an express acknowledgement that the medical providers were independent contractors and not employees or agents of the hospital. The trial court found no triable issue of fact as to an emergency room nurse because a declaration submitted in opposition to the hospital's on the standard of care was ruled inadmissible.

The trial court granted the hospital's motion for summary judgment and entered judgment accordingly. Though the trial court properly found no triable issue of fact as to the emergency room nurse, we find there are unresolved factual issues in determining whether the admission form was binding so that it terminates the hospital's liability. For that reason, we reverse the grant of summary judgment.

**FACTS**

*Background*

An assailant shot Julio Ramirez in the left thigh and lower leg. After the shooting, paramedics transported Ramirez to the hospital. Ramirez arrived at the emergency room at about 11:45 p.m. Ramirez was agitated, suffering a large amount of blood loss, and in extreme pain. Atul Gupta, M.D., the primary emergency room doctor, and Frederick Stafford, M.D., a trauma surgeon, initially examined Ramirez. Dr. Stafford then went into surgery with another gunshot victim. Ramirez remained in Dr. Gupta's care in the emergency room. Based on a lack of pulse in Ramirez's lower leg and severe bleeding, Dr. Gupta ordered an on-call vascular surgeon to be summoned to the hospital.

After Ramirez arrived at the hospital, Ramirez's mother, Herminia Ramirez, was presented with a three-page, printed form entitled "CONDITIONS OF ADMISSION." The Conditions of Admission form included a consent to medical and surgical procedures during hospitalization. Paragraph 4 of form stated "LEGAL RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIAN." It reads:

2

"All physicians and surgeons furnishing services to the patient, including the . . . emergency department physician, and other hospital-based physicians and the like, are independent contractors with the patient and are not employees or agents of the hospital. The patient is under the care and supervision of his/her attending physician and it is the responsibility of the hospital and its nursing staff to carry out the instructions of such physician. It is the responsibility of the patient's physician or surgeon to obtain the patient's consent or informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered to the patient under general and special instructions of the physician. The hospital-based physicians fees are billed separately and independently of hospital charges, which means you will receive multiple bills."

Paragraph 14 of the Conditions of Admission form reads: "If any provision of this agreement is finally determined by a court to be unenforceable, the remainder of this agreement shall remain in full force and effect. [¶] This hospital admission agreement shall bind the parties herein, including . . . the heirs, representatives, executors, administrators, successors, and assigns of such parties . . . ." Ms. Ramirez signed the Conditions of Admission form, with a notation that she was Ramirez's "mom."

Meanwhile, there was a significant delay in the arrival of the on-call vascular surgeon to the hospital. Ramirez was not taken from the emergency room to an operating room until about 2:45 a.m., roughly three hours after he arrived at the emergency room. Ramirez died during surgery at about 7:00 a.m. the following morning.

*The Litigation*

Ms. Ramirez and Ramirez's minor children (collectively Plaintiffs) filed a wrongful death action. The operative pleading is their second amended complaint. It alleges Ramirez "unnecessarily bled to death" as a result of a negligent delay in getting

3

him into surgery. Dr. Gupta, Dr. Stafford, Nurse Lynn Witte, the hospital, and others are listed as defendants.

The hospital filed a motion for summary judgment supported by evidence showing that Herminia Ramirez signed the printed Conditions of Admission form with the language acknowledging that the doctors at the hospital were independent contractors, and not employees, and by an expert's declaration stating that the hospital's nursing staff did not act below the standard of care. The hospital's motion argued there was no liability on its part because the nursing and non-physician medical providers complied with the standard of care at all times. As to the physicians, the hospital's argument relied wholly on *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448 (*Mejia*). The hospital argued the Plaintiffs had reason to know the physicians were not agents because the undisputed evidence established the existence of an admission form with an acknowledgement that the physicians were independent contractors, and not employees or agents of the hospital.

Plaintiffs filed their opposition, supported by a declaration from a nursing expert who offered her opinion that the nurses at the hospital acted below the standard of care during the time Ramirez was treated in the hospital's emergency room.[1] Plaintiffs also presented expert declarations showing that the doctors who treated Ramirez acted below the standard of care.

On the issue of whether the doctors were acting as agents of the hospital during Ramirez's medical treatment, Plaintiffs argued: "[the hospital] alleges that the patient was unable to go over the Conditions of Admissions and as such, provided notice to the patient's mother, Herminia Ramirez, by making her sign the Conditions of Admissions. In fact, evidence exists that the patient was alert and in stable condition upon his arrival to [the hospital] at 11:45 p.m. on July 28, 2007. The patient was a twenty one (21) year old adult, [and] his mother has no authorization to sign on his behalf as [he] at all times herein was an adult. Further, the patient was not taken for tests until 12:00 a.m. and

---

[1]     Plaintiffs' nursing expert was Patricia Reigers, R.N.

4

returned at 12:30 a.m. Herminia Ramirez was told that if she wanted to go in and see her son, she had to sign a stack of papers. Herminia signed the papers at 12:42 a.m. on July 29, 2007, fifty eight (58) minutes after Mr. Ramirez' admittance to [the hospital] and commencement of treatment. The evidence illustrates that Mr. Ramirez was in immediate medical care and [neither] him, nor his mother, could be expected to understand or act upon signing a stack of papers so that she could see her injured son. . . .

"The decedent had no primary care physician[;] he was specifically seeking [emergency] medical care and treatment from at [the hospital] . . . . In fact, he was transported to the Emergency Department via ambulance. But the operation of a hospital emergency room open to the public, where the public comes expecting medical care to be provided through the normal operating procedures within the hospital, falls within the limits for application of principles of ostensible agency and apparent authority. . . .

"Hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and the various medical personnel operating therein. Indeed, often the very nature of a medical emergency precludes choice. [Citation.]

"There is no evidence stating that when Dr. Gupta, Dr. STAFFORD and/or Nurse WITTE were attending to Julio Ramirez from the time of his admittance up until the time his mother signed the Conditions of Admissions, fifty seven (57) minutes later, provided actual notice to the patient, Julio Ramirez that they were independent contractors, apart from [the hospital]. Testimony does exist from Dr. STAFFORD that the patient was alert and awake at his initial examination. Not until an hour later, after Julio Ramirez had been examined, diagnosed, taken for several tests and in the process of receiving medication, did [the hospital] approach his mother to sign the Conditions of Admission. In fact, Herminia Ramirez was left with no option to sigh the Authorization . . . if she wanted to see her son. From a mother's perspective, it can be deduced that Ms. Ramirez

5

did not even read the documents, because she was concerned for her son, who had been admitted into the hospital from gunshot wounds and she just wanted to see him. . . .

"Unless the evidence conclusively indicates that the patient should have known that the treating physician was not the hospital's agent, such as when the patient is treated by his or her personal physician, the issue of ostensible agency must be left to the trier of fact."

The hospital filed objections to Nurse Reigers's declaration submitted in support of Plaintiffs' oppositions. The hospital argued that, while Nurse Reigers was a *qualified nurse*, she was not a *qualified emergency room nurse*. Thus, she was not competent to offer an expert opinion on the standard of care in rendered to Ramirez in an emergency room setting.

At the trial court's direction, the parties submitted further briefing and supporting evidence, addressed to the issue of the nurse's duty of care. Thereafter, the court sustained the hospital's evidentiary objection to Nurse Reigers's declaration in its entirety and then granted the hospital's motion insofar as Plaintiff's claims were based on Nurse Witte's actions. The court also granted the hospital's motion on the issue of lack of agency. The court entered summary judgment in favor of the hospital.

Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854 (*Aguilar*).) Once the defendant makes this showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as

6

to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar, supra*, 25 Cal.4th at p. 850.)

To determine whether the parties have met their respective burdens, the court considers "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' [Citation.]" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) A plaintiff opposing summary judgment cannot rely upon the mere allegations or denials of its pleadings, but "shall set forth the specific facts" based on admissible evidence showing a triable issue exists. (Code Civ. Proc., § 437c, subd. (p)(2); *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188.) When a moving party makes the required prima facie showing, failure to comply with this requirement may, in the court's discretion, constitute a sufficient ground for granting the motion. (See *Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 734-735; *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 568.)

However, the court may not grant the motion unless it first determines that the moving party has met its initial burden of proof. (See *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086 ["[U]nless the moving party has met its initial burden of proof, the court does not have discretion under subdivision (b) of section 437c to grant summary judgment based on the opposing party's failure to file a proper separate statement."]; *Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 106 [trial court must consider all of the papers submitted before exercising its discretion to grant a summary judgment based on the failure to file an adequate separate statement]; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 746.) When the facts are undisputed, the court may grant summary judgment on issues that otherwise could have been submitted to the jury because "[a]n issue of fact becomes one of law and loses its 'triable' character if the undisputed facts leave no room for a reasonable difference of opinion." (*Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1418.) Thus, the defendant is entitled to summary judgment if the record establishes as a matter of law that none of

7

plaintiffs' asserted causes of action can be maintained.  (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 270.)

An appellate court independently reviews an order granting summary judgment. (*Aguilar, supra,* at p. 860.)  We determine whether the court's ruling was correct, not its reasons or rationale.  (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.)  "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment."  (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)  "'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.'  [Citations.]"  (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009; accord, *Aguilar, supra*, 25 Cal.4th at p. 843.) We apply these standards as follows.

## II.     The Hospital's Liability Arising from Nursing Care

Plaintiffs' argue the trial court improperly granted summary judgment because there were conflicting expert declarations regarding the nursing care provided. Specifically, the hospital's motion on the standard of care of the nursing services provided to Ramirez motion was based on the expert declaration of Nurse McConnell, and the Plaintiff's submitted an opposing declaration from Nurse Reigers.  According to Plaintiffs, this created a triable issue of fact, making this is an inappropriate case for granting summary judgment.  We disagree.

It is true, as the Plaintiff's assert, that when ruling on a motion for summary judgment a trial court may not weigh evidence as a fact-finder and must liberally construe opposition papers.  We also agree with Plaintiffs that a trial court may not grant a motion for summary judgment where there is "valid, conflicting expert testimony" on the issues of duty, breach or causation.  The problem with the rules relied on by Plaintiffs is that the trial court found Nurse Reigers's expert declaration entirely inadmissible.  As a result, there was no evidence admitted in opposition to the hospital's motion and there is no

8

conflicting expert testimony. The motion was appropriately granted as to the hospital's nursing staff.

**III.   Liability as to the Doctors' Care —Respondeat Superior Liability and Ostensible Agency**

Plaintiffs next contend the trial court erred in granting summary judgment in favor of the hospital based upon the lack of ostensible agency of the treating physicians. Plaintiffs argue the record discloses the existence of disputed issues of material fact which must be resolved in determining whether the Conditions of Admission form signed by Ramirez's mother is enforceable so as to preclude Plaintiffs' claims against the hospital. We agree.

*The Governing Law*

The respondeat superior liability and ostensible agency arguments on both sides in the current case rely upon *Mejia, supra,* 99 Cal.App.4th 1448. In *Mejia*, Division Two of the Fourth District Court of Appeal traced the history, principles, and law of respondeat superior liability and ostensible agency as it involves hospitals and medical professionals. The court reviewed authorities in both California and in other states, and then applied its understanding of the law as it exists today in reversing a judgment of nonsuit in favor of a hospital based on the lack of ostensible agency. We find the following discussion instructive:

"Although the cases discussing ostensible agency use various linguistic formulations to describe the elements of the doctrine, in essence, they require the same two elements: (1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff. (See, e.g., *Sword* [*v. NKC Hospitals, Inc*. (Ind. 1999) 714 N.E.2d 142, 151 (*Sword*)]; *Pamperin* [*v. Trinity Memorial Hosp*. (Wis. 1988) 423 N.W.2d 848, 854, 856 (*Pamperin*).]

"Regarding the first element, courts generally conclude that it is satisfied when the hospital 'holds itself out' to the public as a provider of care. (*Butler v. Domin* (Mont. 2000) 15 P.3d 1189, 1196-1197 (*Butler*); *Sword, supra*, 714 N.E.2d at p. 151.) In order

9

to prove this element, it is not necessary to show an express representation by the hospital. (*Butler*, at p. 1198; *Sword*, at p. 151; *Clark* [*v. Southwest Hosp. & Family Health Ctr.* (Ohio 1994) 628 N.E.2d 46, 52-53 (*Clark*)] . . . .) Instead, a hospital is generally deemed to have held itself out as the provider of care, unless it gave the patient contrary notice. (*Butler*, at p. 1197; *Sword*, at p. 152; see also *Pamperin*, at pp. 856-857.) Many courts have even concluded that prior notice may not be sufficient to avoid liability in an emergency room context, where an injured patient in need of immediate medical care cannot be expected to understand or act upon that information. (*Simmons* [ *v. Tuomey Regional Medical Center* (S.C. 2000) 533 S.E.2d 312, 322-323 (*Simmons*)]; *Sword*, at p. 152; *Clark*, *supra*, at p. 54, fn. 1.)

"The second element, reliance, is established when the plaintiff 'looks to' the hospital for services, rather than to an individual physician. (*Butler, supra*, 15 P.3d at p. 1196; *Simmons, supra*, 533 S.E.2d at p. 322; *Pamperin, supra*, 423 N.W.2d at p. 857; *Jackson* [ *v. Power* (Alaska 1987) 743 P.2d 1376, 1380 (*Jackson*)].) However, reliance need not be proven by direct testimony. (*Clark, supra*, 628 N.E. at pp. 52-53; *Jackson*, at p. 1382, fn. 10; see also *Pamperin*, at p. 857 . . . .) In fact, many courts presume reliance, absent evidence that the plaintiff knew or should have known the physician was not an agent of the hospital. (*Butler*, at p. 1197; *Sword, supra*, 714 N.E.2d at p. 152 . . . .)

"As should be apparent to an astute observer, there is really only one relevant factual issue: *whether the patient had reason to know that the physician was not an agent of the hospital.* As noted above, hospitals are generally deemed to have held themselves out as the provider of services unless they gave the patient contrary notice, and the patient is generally presumed to have looked to the hospital for care unless he or she was treated by his or her personal physician. *Thus, unless the patient had some reason to know of the true relationship between the hospital and the physician — [e.g.], because the hospital gave the patient actual notice or because the patient was treated by his or her personal physician — ostensible agency is readily inferred.*" (*Mejia, supra*, 99 Cal.App.4th at pp. 1453-1455, italics added, fn. omitted.)

*Analysis*

If the decedent, Ramirez, had gone to the hospital for *pre-planned* surgery, and, if *he* had signed the Conditions of Admission form acknowledging that the physician doing the surgery was not an agent or employee of the hospital, and if *he* were suing the hospital, then we might find that *Mejia, supra*, 99 Cal.App.4th 1448 applied, immunizing the hospital against respondeat superior liability based upon Ramirez's own express acknowledgement of the absence of agency. If undisputed evidence shows a patient in a non-emergency treatment situation expressly acknowledged a lack of agency between a physician and hospital, we might conclude the patient was bound by the acknowledgement. However, the scenario we described is not what happened between Ramirez and the hospital.

Here, Ramirez was the *patient* and he was undisputedly an adult. He did not sign the Conditions of Admission form acknowledging that there was no agency relationship between the hospital and the treating physicians. On the contrary, the *patient's mother* signed the form. In the absence of evidence showing that Ramirez authorized his mother to act on his behalf, it cannot definitively be found that the patient acknowledged the non-agent status of the doctors. We see two agency issues in the current case – the ostensible agency between the hospital and the doctors in the emergency room, and the possible agency relationship between Ramirez and his mother. We do not believe this is a proper case for summary judgment under *Mejia* in the absence of evidence showing that the patient, personally or by an authorized agent, acknowledged a non-agency relationship between hospital and doctor. Even if Ramirez had survived, we think his mother's acknowledgement of non-agency might not prevent Ramirez from seeking to impose liability on the hospital. At least not until evidence showed Ms. Ramirez had authority to bind her son to the acknowledgement of non-agency.

It also makes a difference that this is a wrongful death action brought by Ms. Ramirez and Ramirez's children, rather than a malpractice claim by Ramirez himself. In the context of summary judgment, for the reasons stated above, we find there are factual questions about Ms. Ramirez's authority to bind her grandchildren to the

11

acknowledgement of non-agency to defeat the hospital's motion for summary judgment.

We also find the motion for summary judgment should not have been granted as to Ms. Ramirez. She did not, as a matter of law, bind herself to the express acknowledgment of non-agency. Where the evidence shows an acknowledgement of non-agency was signed in a stressful situation, with overtones of duress, it is a question of fact whether the acknowledgement is enforceable against the signator. While we do not see a declaration from Ramirez's mother in the plaintiffs' opposition to the hospital's motion, there are excerpts from her deposition testimony. Ms. Ramirez's deposition testimony shows the following: "[The hospital staff] left me there sitting down for 30 minutes. And then after that, a woman from there came out, and she told me that if I wanted to go in and see [my son], I had to sign a stack of papers." A jury reasonably could infer that Ms. Ramirez did not understand, or freely accept, the acknowledgement that the doctors in the emergency room were not the hospital's agents or employees.

The existence of a non-agency acknowledgement form, standing on its own as it largely does here, not signed by the patient receiving treatment or shown to be signed by a person who was an authorized agent for medical decisions, is insufficient to establish as a matter of law that the hospital is immune from respondeat superior liability via a *Mejia* defense.

## DISPOSTIION

The summary judgment entered in favor of the hospital is reversed. Appellants to recover their costs on appeal.

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.

12