[No. B161081. Second Dist., Div. Seven. May 27, 2003.]

TINA SHEFFIELD, Plaintiff and Appellant, v.
LOS ANGELES COUNTY DEPARTMENT OF SOCIAL SERVICES,
Defendant and Respondent.

## COUNSEL

Law Offices of Lisa L. Maki and Lisa L. Maki for Plaintiff and Appellant.

Gutierrez, Preciado & House, Calvin House, Nohemi Gutierrez Ferguson and Sara S. Petit for Defendant and Respondent.

## OPINION

MUÑOZ, J.*—Betra Thompson (Thompson), a coworker of Tina Sheffield (Appellant) called Appellant at home and asked for a date. Appellant declined with an emphatic "No!" The next day, at the Los Angeles County Department of Social Services (County), the place where they both work, numerous calls were made to Appellant's work phone by Thompson. A complaint was made to a supervisor who took no affirmative action, and the supervisor decided to wait and see what happened. Within a week matters had deteriorated to such an extent that Thompson ended up attacking Appellant at her desk. Appellant filed a claim pursuant to the California Tort Claims Act and obtained a right to sue letter from the California Department of Fair Employment and Housing (Department) under the California Fair Employment and Housing Act (FEHA).[1] County's motion for summary judgment was granted on the basis that there was no showing that there was a hostile work environment. We have concluded the issue of whether there was a hostile work environment was a factual question for the trier of fact to resolve. Accordingly, we reve e the judgment.

---

*Judge of the Los Angeles Superio Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Cons tion.

[1]Government Code section 12900  seq.

## STATEMENT OF FACTS

In October 1997 Appellant and Thompson were coworkers at the department of social services. Appellant was an intermediate clerk typist and Thompson was a clerk. Sometime prior to October 3, 1997, Appellant and Thompson attended a class together and Thompson and she had exchanged home telephone numbers.

On Thursday October 30, 1997, after working hours, Thompson called Appellant at home and informed Appellant that she, Thompson, liked Appellant "like a man likes a woman." This revelation made Appellant uncomfortable. After saying "No," Appellant hung up the phone.

The next day, Friday October 31, 1997, Appellant told her supervisor, Rosemarie Fernandez (Fernandez), about the conversation and that she was scared. Appellant further stated she didn't want to cost anybody their job, but Appellant indicated she wanted them to tell Thompson to leave her alone and to do whatever it took to have Thompson leave her alone.

Fernandez informed Appellant that Ms. Lisberg (Lisberg), the next person in the chain of command, was not at work because it was her day off. Fernandez further stated she would not be at work on Monday. Thus the first time Fernandez would be able to inform Lisberg of Appellant's concerns would be Tuesday, November 4, 1997. Appellant did not express any concerns about waiting until Tuesday for action to be taken.

However, that same day Thompson called Appellant at her workstation at least three times. In one of her calls she once again asked Appellant to go out on a date. Appellant once again responded with a "No" and hung up the phone. Nevertheless, Thompson continued to call Appellant's telephone extension, and at one point Appellant had a coworker answer the telephone. As a result, Appellant made three separate verbal complaints to Fernandez. The next day, Saturday, Appellant put a block on her home telephone.

The following Monday, November 3, 1997, Appellant was at L.A. Trade Tech attending a class. As Appellant was walking to her class, she heard Thompson calling her name in an angry manner. Appellant took off running because of the tone of Thompson's voice and because Thompson was a lot bigger than Appellant. After the class was completed, Appellant wrote a letter to Thompson saying she was not attracted to women and asking

Thompson not to call her anymore.[2] Appellant watched Thompson as she opened the envelope and began to read. Appellant did not tell any supervisor about the school incident or the writing of the letter. However, she did place a copy of the letter in Fernandez's in box even though Fernandez was not at work.

The next day, Tuesday, November 4, 1997, Appellant tried to avoid Thompson by staying away from her work area and going to the restroom on a different floor of the building. However, at one point Thompson and Appellant saw each other in a hallway. Thompson made a fist which she slammed into her other palm while at the same time looking at Appellant and frowning. Appellant reported this incident to Fernandez.

Also, on that same day, Fernandez showed Appellant's letter to Lisberg, who determined the letter met Los Angeles County's harassment criteria because the letter informed Thompson that the behavior was unacceptable. Lisberg then told Fernandez to ask Appellant if she wanted the supervisors to do anything other than what Appellant had done in giving the letter to Thompson. Appellant replied she did not want anyone to lose their job, but she did want the supervisors to let Thompson know Appellant was not interested in her and that Appellant wanted to be left alone.

Wednesday, November 5, 1997, was a relatively quiet day. There were no incidents involving Appellant and Thompson and Lisberg was out of the office.

The next morning, Thursday, November 6, 1997, started off with Thompson going to Fernandez's office, where she stated she wanted to talk to Fernandez about Appellant, who was Fernandez's secretary. Fernandez told Thompson to have her supervisor call Fernandez so that a meeting could be arranged.

Thompson then proceeded to walk out of Fernandez's office. As Thompson walked by Appellant's desk she stated she was going to get Appellant.

---

[2] The letter stated: "Betra [¶] I have to be honesty [sic] and tell you I don't 'Swing that Way.' I am totally straight thats [sic] why I've been avoiding you I have never been approach [sic] in such away [sic] and truly did not like it, but I'm not into hurting peoples [sic] feelings, however I thought maybe if I cut all conversations short and avoided as much contact with you, you would get the message 'I'm strictly into men'. So please don't call me anymore and I don't want to talk about this at all. I'm not angry just confused, I don't understand why you would tell me something like that so let's just pretend you never said anything to me o.k. [¶] Respectfully yours, [¶] Tina Sheffield"

When Appellant did not respond Thompson then stated, "I'm going to get your A-S-S." Appellant replied, "I'm not afraid of you so just leave me alone." Thompson walked off and then returned stating, "I am going to get you now." Thompson then began hitting Appellant on the back of the head and the neck. The altercation lasted about 15 seconds.

After the two women were separated, Appellant then grabbed a three-hole punch with which to hit Thompson should she come back. The police were called and the personnel division and Lisberg were notified of the incident. Lisberg then had all the witnesses complete affidavits of what each witness had observed. Following the incident, Thompson was immediately sent home. An investigation of the incident was conducted. Thompson was eventually terminated because of her attack on Appellant.

Appellant filed a claim with County in compliance with the California Tort Claims Act[3] and also filed a complaint with the Department. Appellant's claim was denied by the County and she received a right to sue letter from the Department. A complaint, alleging sexual harassment in violation of Government Code section 12940, was then filed against the County and Thompson.

## STANDARD OF REVIEW

"We review an award of summary judgment under the same standard applied by the trial court—de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In addition, our account of the facts is presented in the light most favorable to the nonmoving party below, in this case plaintiff, and assumes that, for purposes of our analysis, her version of all disputed facts is the correct one. (*Saelzler, supra,* 25 Cal.4th at p. 768; *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)" (*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999 [112 Cal.Rptr.2d 347].) The defendant who moves for summary judgment must conclusively negate a necessary element of the plaintiff's case or establish a complete defense so that under no possible hypothesis is there a material issue of fact for the trier of fact to resolve. (*Flait v. North Am. Watch Corp.* (1992) 3 Cal.App.4th 467, 474 [4 Cal.Rptr.2d 522].)

---

[3]Government Code section 810 et. seq.

*The FEHA Requirements*

Government Code section 12940[4] provides, in relevant part: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: . . . (j)(1) For an employer . . . or any other person, because of . . . sex, . . . to harass an employee, . . . Harassment of an employee, . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." Subdivision (k) of section 12940 places an affirmative duty on the employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)

█ The purpose of FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, color, sex, national origin, and other enumerated characteristics. (*Trujillo v. North County Transit Dist.*, (1998) 63 Cal.App.4th 280, 286 [73 Cal.Rptr.2d 596].) The policies expressed in FEHA are fundamental. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130 [87 Cal.Rptr.2d 132, 980 P.2d 846]; *Brown v Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].) Same sex harassment is considered sexual harassment covered by section 12940. (*Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409 [26 Cal.Rptr.2d 116].) Because the objectives and wording of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) are similar to that of FEHA, California courts often look to federal cases for assistance in interpreting FEHA. (*Reno .v. Baird* (1998) 18 Cal.4th 640, 647-648 [76 Cal.Rptr.2d 499, 957 P.2d 1333].)

█ In reviewing sex-based suits under FEHA, "Courts have recognized two forms of sex-based workplace harassment, quid pro quo and hostile or abusive environment. (See *Meritor Savings Bank v. Vinson*. [(1986)] 477 U.S. 57 [106 S.Ct. 2399, 91 L.Ed.2d 49].) The former consists, as the Latin phrase signifies, of unwelcome demands for sexual favors in return for advancement or other perquisites in the workplace. Sex-based hostile or abusive environmental claims, on the other hand, arise when 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult" . . . that is "sufficiently severe *or* pervasive to alter the conditions of the victim's

---

[4]Hereafter section 12940.

employment" . . . .' . . . (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 [114 S.Ct. 367, 370, 126 L.Ed.2d 295], italics added.)" (*Birschtein v. New United Motor Manufacturing, Inc., supra,* 92 Cal.App.4th at p. 1000, fn. omitted.) However, the harassment need not be severe *and* pervasive in order to impose liability; either severe *or* pervasive will suffice. (*Hostetler v. Quality Dining, Inc.* (7th Cir. 2000) 218 F.3d 798, 808).

Here, the parties are in agreement that in this case it is the sex-based hostile or abusive environment claims that are at issue. In order to establish this claim, Appellant was required to show (1) she was subjected to verbal or physical contact of a sexual nature, (2) the conduct was unwelcome, and (3) the abusive conduct was sufficiently severe *or* pervasive so as to alter the conditions of her employment thus creating an abusive working environment. (*Fuller v. City of Oakland* (9th Cir. 1995) 47 F.3d 1522, 1527; italics added.)

In *Aguilar v. Avis Rent A Car System, Inc.* the court had occasion to discuss the amount of harassment needed to bring a hostile environment action under FEHA, " 'For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." [Citation.]' *(Meritor Savings Bank v. Vinson, supra,* 477 U.S. 57, 67 [106 S.Ct 2399, 2405].) The high court reaffirmed this standard in *Harris v. Forklift Systems, Inc., supra,* 510 U.S. 17, 21-22 [114 S.Ct 367, 370, 126 L.Ed.2d 295, 302]: 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.' Recently, the high court observed that it had 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment. . . .' (*Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 788 [118 S.Ct. 2275, 2284, 141 L.Ed. 2d 662, 677, 157 A.L.R. Fed. 663].)" (*Aguilar v. Avis Rent A Car System, Inc., supra,* 21 Cal. 4th at p. 130.) Furthermore, FEHA's prohibitions are not a "civility code" and are not designed to rid the workplace of vulgarity. (See *Aguilar v. Avis Rent A Car System, Inc., supra,* at pp. 130-131; *Faragher v. City of Boca Raton, supra,* 524 U.S. 775 at pp. 787-788 [118 S.Ct. at pp. 2283-2284]; *Baskerville v. Culligan Intern. Co.* (7th Cir. 1995) 50 F.3d 428, 430.) To be actionable, the conduct must be extreme, but there is no requirement that the employee endure sexual harassment until his or her psychological well-being is so spent that the employee requires psychiatric

assistance. (*Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 878.) As the *Ellison* court noted, it is the harasser's conduct that must be pervasive or severe. (*Ibid.*)

1. *A Trier of Fact Could Find Appellant Was Subjected to a Hostile Work Environment Because of the Severe Nature of Thompson's Actions*

■  In evaluating a sexual harassment claim based upon a hostile work environment, two things must be determined: has the employee been subjected to a hostile work environment and, if so, is the employer liable for the harassment that caused the hostile work environment. (*Little v. Windermere Relocation Inc.* (9th Cir. 2002) 301 F.3d 958, 966.) As we stated in *Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142 [124 Cal.Rptr.2d 1], a case in which we found, as a matter of law that there was no hostile work environment, the question of whether or not there is a hostile work environment must be determined from the totality of the circumstances. (*Id.* at pp. 149-150.) In making this determination the trier of fact should consider, "(1) the nature of the unwelcome sexual acts or words (with physical touching generally considered more offensive than mere words); (2) the frequency of the offensive acts or encounters; (3) the total number of days over which all the offensive conduct occurred; and (4) the context in which the sexually harassing conduct occurred." (*Id.* at p. 150.)

■  An examination of the facts discloses that, on Thursday, after working hours, Thompson made her initial call to Appellant at Appellant's home phone. When Thompson's revelations about love and request for a date were rebuffed, Thompson brought her conduct into the workplace by calling Appellant at least three times at Appellant's workstation and asked Appellant for a date. Appellant once again declined and hung up the phone. Appellant told her supervisor about the Thursday phone call and made at least three complaints on Friday to her supervisor about the Friday phone calls. Appellant was so bothered by Thompson and her actions that she had her telephone number changed on Saturday.

On Monday Thompson apparently followed Appellant to school, causing Appellant so much stress that Appellant ran to her class to get away from Thompson. That same day Appellant wrote a letter to Thompson in which she stated she was into men and did not want any further conversations on the subject. The letter was delivered to Thompson and Appellant watched to make sure Thompson was reading the letter. Appellant gave a copy of the letter to her supervisor and attempted to avoid Thompson the rest of the day by staying away from her workstation and using the first floor restrooms instead of those on the sixth floor which was where she worked. On

Tuesday, Thompson, upon passing Appellant in a hallway, frowned at Appellant and slammed her fist into the palm of her other hand. Appellant notified her supervisor of the fist slamming incident, but once again nothing was done by County. It was not until Appellant had been attacked, beaten and battered that County took any action with regard to Thompson.

County argues that since the time span from the initial call to the attack was less than seven days, there was insufficient time for Thompson's conduct to have evolved into a hostile work environment for Appellant. County cites numerous cases where incidents over a longer period of time have been held not to have created a hostile environment (See e.g. *Miller v. Vesta* (E.D.Wis. 1996) 946 F.Supp. 697 [court stated same sex harassment which occurred over eight months was akin to "junior high school crush"]) or what County perceived as more severe conduct was held not to create a hostile work environment. (*Quinn v. Green Tree Credit Corp.* (2d Cir. 1998) 159 F.3d 759, 768 [statement that plaintiff had "sleekest ass" in office coupled with a single incident of intentional touching of plaintiff's "breasts with papers that he was holding in his hand" was held insufficient.]; see also *Weiss v. Coca-Cola Bottling Co. of Chicago* (7th Cir. 1993) 990 F.2d 333, 337 [supervisor kept asking plaintiff about her personal life, called her a dumb blonde, placed hand on her shoulder at least six times, asked her out, placed "I love you" signs in her work area and tried to kiss her once in a bar and twice at work held insufficient]; *Murray v. Chicago Transit Auth.* (7th Cir. 2001) 252 F.3d 880 [supervisor's two dinner invitations which appeared to be sexual advances were insufficient when plaintiff waited more than nine months to complain]; *Chamberlin v. 101 Realty, Inc.* (1st Cir. 1990) 915 F.2d 777, 783 [five sexually motivated advances over a four- or five-week period held insufficient for hostile work environment, but did form basis for quid pro quo finding].)

However, what makes this case unique is the violence aspect that inserted itself into the case when Thompson, who was much bigger than appellant, made a fist and slammed that fist into her other palm while looking at Appellant and frowning. Until this incident Thompson's actions had amounted to boorish or overbearing behavior. The slamming the fist into the palm added an aspect of violence that could be found to have changed the conditions of Appellant's employment. The fist-slamming incident was also reported to Appellant's supervisor. Yet nothing was done on that day, Tuesday, or the next day. Not until Thursday, after Appellant had been attacked, did the County act. Although case law appears to adhere to the old adage that "sticks and stones may break my bones, but words will never hurt me," nonetheless, when violence or the threat of violence is added to the

equation, a trier of fact could determine Appellant's conditions of employment had been drastically changed and that she was in a hostile work environment.[5] (See *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608 [262 Cal.Rptr. 842].)

### 2. County Could Be Found to Be Liable by a Trier of Fact Because of Its Inaction

Turning to the second question posed by *Little v. Windermere Relocation Inc., supra,* 301 F.3d 958, whether County is liable for the harassment that caused the hostile work environment, a trier of fact could determine that County failed to take reasonable steps to prevent the harassment once it knew of Thompson's implied threats of violence.

County had a duty under subdivisions (j) and (k) of section 12940 not only to prevent harassment, but also, once it became aware of any harassment, to take reasonable steps to prevent it. Here, Fernandez, Appellant's immediate supervisor, was aware of the harassment, as was Fernandez's superior. While Appellant had made statements to the effect that she did not want anyone to lose their job, she also made it clear she wanted to be left alone and wanted Thompson to stop it. A jury could find County did not "take all reasonable steps" to prevent further harassment and as a result Appellant was intimidated and then attacked and pummeled in the workplace. (§ 12940.) Once County was on notice Thompson might be violent, County's failure to act could be found to amount to a deliberate indifference that caused Appellant the harm she suffered on Thursday morning. (See, e.g., *Davis v. Monroe County Bd. of Educ.* (1999) 526 U.S. 629, 644-645 [119 S.Ct. 1661, 1671-1672, 143 L.Ed.2d 839].)

As the court in *Ellison v. Brady* stated, "Surely, employees need not endure sexual harassment until their psychological well-being is seriously affected to the extent that they suffer anxiety and debilitation." (*Ellison v. Brady, supra,* 924 F.2d at p. 878.) Here, there were factual issues to be determined and therefore the trial court erred in granting the motion for summary judgment.

---

[5]To the extent that an argument could be made that Thompson's acts were due to anger over being reported as opposed to anger over the rejection, Thompson's actions were still gender based, retaliatory and prohibited under section 12940 subdivision (h). Additionally, County was still under a continuing duty to protect plaintiff from harm. (See § 12940 subd. (k).)

## DISPOSITION

The judgment is reversed.

Perluss, P. J., and Woods, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.