Filed 10/9/14  Kevorkian v. Hurlbutt CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LOUANNA FERN KEVORKIAN et al., | F067109 |
| Plaintiffs and Appellants, | (Super. Ct. No. 11-245333) |
| v. | |
| JAMES P. HURLBUTT, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Paul A. Vortmann, Judge.

Joel M. Murillo for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Lowell T. Carruth and Scott M. Reddie for Defendant and Respondent.

-ooOoo-

Plaintiffs Louanna Kevorkian and Lynne Petersdorf were parties to two lawsuits involving the distribution of their deceased mother's estate.  The suits were settled after years of litigation, but Kevorkian and Petersdorf afterward became dissatisfied with their attorney, defendant James Hurlbutt, and brought the present suit against him, alleging fraud and elder abuse.  The trial court granted Hurlbutt's motion for summary judgment.

It determined that plaintiffs failed to raise triable issues of material fact and that the statute of limitations had expired. We affirm.

## FACTS AND PROCEDURAL HISTORY

Kevorkian, age 76, and Petersdorf, age 64, are sisters. Their mother, Hazel Todd, died on March 13, 2002, and Kevorkian became trustee of Todd's living trust. A probate matter, *In re Hazel J. Todd Living Trust* (Super. Ct. Tulare County, 2003, No. 03-206315), was filed in Tulare County Superior Court in 2003. A dispute arose over real property that had been owned by Todd, leading to a separate lawsuit against Kevorkian and Petersdorf by their sister Esther Hoover. Hoover filed the complaint in *Hoover v. Kevorkian* (Super. Ct. Tulare County, 2005, No. 05-214266) in Tulare County Superior Court on May 4, 2005.

Hurlbutt represented Kevorkian and Petersdorf in both matters. He signed a representation agreement with both clients for *Hoover v. Kevorkian* on July 11, 2005, and filed a substitution of attorney in the superior court for both clients in *In re Hazel J. Todd Living Trust* the same month.

The parties reached a settlement agreement in *Hoover v. Kevorkian* after a mediation with a retired judge, Howard Broadman, on January 26, 2006. That action was dismissed on March 6, 2006, pursuant to the settlement. The parties reached a settlement in *In re Hazel J. Todd Living Trust* on November 9, 2009, also following a mediation with Broadman.

On December 15, 2011, Kevorkian and Petersdorf filed their original complaint in the present case, naming Hurlbutt and Broadman as defendants. The complaint alleged that Hurlbutt and Broadman "force[d] [Kevorkian and Petersdorf] into a settlement that was not of their own free will" by "threatening, berating, yelling at, and exerting undue influence" on them. The mediation of November 9, 2009, "was conducted over the objections" of Kevorkian and Petersdorf. Kevorkian and Petersdorf were "financially distressed, and suffered mental and physical infirmities" that made them "fragile and

2.

susceptible to mental and emotional distress .…" Hurlbutt "billed for services that were not performed or performed over and over again without any purpose other than to churn out more fees." Broadman also "charg[ed] for work that he did not perform" and charged "twice for the same work .…" The complaint alleged that Hurlbutt "orally made a warranty that his attorney's fees would not exceed forty thousand dollars .…" (It did not, however, allege he actually charged more than that.) The complaint alleged two causes of action: (1) violation of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.); and (2) conspiracy to commit fraud.

Broadman filed a motion to strike the complaint based on the anti-SLAPP statute (Code Civ. Proc., § 425.16), the mediation confidentiality statute (Evid. Code, § 1119), and the litigation privilege (Civ. Code, § 47). The motion was granted and the case was dismissed as to Broadman.

Hurlbutt demurred. His demurrer was sustained with leave to amend.

Plaintiffs filed an amended complaint on March 9, 2012. It omitted the allegation that Hurlbutt promised his fees would not exceed $40,000, instead claiming that Hurlbutt promised a cap of $20,000 but had in reality billed more than $66,000. The claims that Hurlbutt billed for services not performed and performed needless work to "churn" fees and intentionally prolonged the litigation to increase his fees remained, as did the allegations that Hurlbutt used overbearing pressure to drive plaintiffs to accept a disadvantageous settlement against their will at the mediation on November 9, 2009. There were now three causes of action: (1) fraud and deceit in violation of the Elder Abuse and Dependent Adult Civil Protection Act; (2) constructive fraud; and (3) conspiracy to commit fraud. The amended complaint mentioned the fact that, in July 2011, Hurlbutt had filed a lawsuit against Kevorkian for unpaid fees. The filing of this suit was described as the "last overt act" in the constructive fraud and the conspiracy.

3.

Hurlbutt filed a motion to strike from the amended complaint all references to the mediation proceedings in which Kevorkian and Petersdorf were allegedly pressured to settle. The motion was granted.

Hurlbutt filed two separate motions for summary judgment, one for Kevorkian and one for Petersdorf. On the merits of plaintiffs' claims, the motions argued as follows: Plaintiffs would be unable to produce any evidence that Hurlbutt performed unnecessary work, billed for work not performed, deliberately prolonged the litigation, or conspired with Broadman to do any of those things. Plaintiffs would be unable to establish anything about any improper conduct related to the mediation or the November 9, 2009 settlement, because the court had granted Hurlbutt's motion to strike all references to those matters. Hurlbutt's declaration stated that he never promised to cap his fees at $20,000. The motion for Petersdorf stated that all invoices had been submitted to, and all payments received from, Kevorkian alone, so Petersdorf could not establish any damages from any of the alleged conduct related to overbilling or performance of unnecessary work.

The motions also argued that plaintiffs' claims were barred by the statute of limitations. The three-year limitations period of Code of Civil Procedure section 338, subdivision (d), applied to plaintiffs' first cause of action for fraud. This period began running no later than March 2007 when Kevorkian (who had a degree in accounting and was retired from a career as controller of a large company) had received and paid invoices from Hurlbutt exceeding a total of $20,000, and therefore should have been aware of the basis of her claim that Hurlbutt breached a promise to cap his fees at that amount. (Kevorkian had received and acknowledged bills from Hurlbutt exceeding $20,000 even earlier, in May 2006.) Plaintiffs filed their complaint on December 15, 2011, more than four years later. Regarding Petersdorf, Hurlbutt argued that the cause of action for fraud accrued even earlier, in April 2006, when he informed her that he would no longer be representing her in *In re Hazel J. Todd Living Trust*. His representation in

4.

*Hoover v. Kevorkian* had by then already ended in a settlement. He argued that Petersdorf should have been aware of the basis of her claims by that time. If Petersdorf was claiming later accrual based on a contention that she could not reasonably have known of the basis of her claims until a later time, it was her burden to plead and prove this.

Hurlbutt contended that the second cause of action, constructive fraud, was subject to Code of Civil Procedure section 340.6. That section provides a one-year limitations period for claims against lawyers arising from their professional services, other than claims for actual fraud. This period is tolled during the representation. Kevorkian knew of Hurlbutt's alleged lapses by the time of letters she wrote to him on November 23, 2009 and October 25, 2010, complaining about the 2009 settlement, disputing Hurlbutt's fees, and expressing dissatisfaction about other aspects of Hurlbutt's representation. Hurlbutt's representation in *Hoover v. Kevorkian* ended in 2006 and he obtained an order granting his motion to withdraw as counsel in *In re Hazel J. Todd Living Trust* on January 13, 2010. The latest of all these dates, October 25, 2010, was more than one year before the complaint was filed. Hurlbutt also argued that Petersdorf should have known of the basis of her claims more than a year before the complaint was filed. She should have known no later than the time he told her he would no longer represent her in 2006 or the time *In re Hazel J. Todd Living Trust* was settled in 2009.

Plaintiffs' brief opposing the motions for summary judgment focused on allegations intended to show that Hurlbutt took advantage of plaintiffs' vulnerabilities. It stated, for instance, that Kevorkian wrote to Hurlbutt to say that she was going into debt and liquidating retirement savings to finance the litigation and that she was determined not to settle. Hurlbutt, however, billed her for a substantial amount of time spent on settlement efforts. When the settlement took place on November 9, 2009, Kevorkian became "incapacitated due to mental stress .…" Plaintiffs also argued that Hurlbutt "committed financial abuse [by way of] the 'nickel-and-dime' technique." For example,

5.

over the years, he raised his hourly rate from $200 to $210 and then $220; and his invoices stated terms of 1 percent net 30 days, which exceeds the statutory rate for prejudgment interest.

Plaintiffs' brief opposing the motions further argued that the four-year statute of limitations in the Elder Abuse and Dependent Adult Civil Protection Act applied. (Welf. & Inst. Code, § 15657.7.) The brief did not, however, contain any argument about when the cause of action accrued or any attempt to explain when the four-year period expired.

The evidence submitted by plaintiffs in support of their opposition consisted of Kevorkian's declaration, a letter from Kevorkian to Hurlbutt dated November 23, 2009, and some medical records. The declaration stated that Kevorkian, being over 65 at all relevant times, was an elder within the meaning of the Elder Abuse and Dependent Adult Civil Protection Act, while Petersdorf was mentally ill. When Hurlbutt withdrew from representation of Petersdorf, his decision to do so was unilateral and Kevorkian was surprised by it. Hurlbutt promised to cap his fees at $20,000, and when his billings exceeded that amount, Kevorkian felt trapped because it would be even more costly to retain a new lawyer who would have to learn about the case from scratch. The November 9, 2009 mediation, which resulted in settlement, was originally planned as an arbitration. It was unexpectedly converted to a mediation by Broadman. Kevorkian was traumatized by the events of that day and considered the settlement disadvantageous. Kevorkian's letter claimed that Hurlbutt and Broadman forced Kevorkian to sign the settlement agreement on November 9, 2009. She was in an emotional state and they were taller and heavier than she was. She "knew" they would not "let [her] leave without signing the agreement." Petersdorf joined them in urging her to sign. Hurlbutt "never defended" Kevorkian. The sisters who had sued Kevorkian and Petersdorf were getting too much. Hurlbutt and Broadman promised that Kevorkian's sisters would never be able to contact her again, but no restraining order was issued and contacts continued. Kevorkian believed the change from arbitration to mediation was illegal and Hurlbutt

6.

was ineffective in dealing with Broadman's pressure to settle. Kevorkian closed the letter by agreeing to a $3,000 fee payment Hurlbutt had requested.

Plaintiffs' opposition to the motions for summary judgment included a response to Hurlbutt's separate statement of undisputed facts. This response did not, however, meaningfully dispute any of Hurlbutt's claimed facts. Instead, it either said nothing in response to each fact, made a statement effectively conceding the fact, or purported to dispute the fact on grounds irrelevant to it. For instance, where Hurlbutt's statement asserts that he told Petersdorf in April 2006 that he was no longer representing her, plaintiffs' response does not contest this, but says plaintiffs were surprised by it and felt "boxed into a dilemma …." Similarly, where Hurlbutt's statement says Hurlbutt never billed Petersdorf, plaintiffs' response does not dispute this fact, instead saying that Kevorkian paid Hurlbutt on behalf of Petersdorf and herself. Where Hurlbutt states that the original complaint was filed on December 15, 2011, plaintiffs' response denies this for reasons that are unresponsive: "False. The statute of limitations is four years pursuant to Welfare and Institutions (W&I) Code Sections 15600 *et seq.*"

Plaintiffs' response to Hurlbutt's separate statement also failed to state any additional facts plaintiffs were purporting to place in dispute. The key allegations of the complaint—that Hurlbutt made a false promise to cap his fees and that he billed for unnecessary work and work not performed—are unsupported by any facts in plaintiffs' response to the separate statement.

The court filed two orders, one granting the motion for summary judgment as to Kevorkian and one granting the motion as to Petersdorf. For both, the court stated that plaintiffs failed to dispute adequately any of Hurlbutt's claimed undisputed facts.

On the statute of limitations, the court stated that Kevorkian knew or should have known of her causes of action by May 27, 2006, when she had incurred and acknowledged more than $20,000 in Hurlbutt's fees. Hurlbutt's motion to withdraw as Kevorkian's counsel was granted on January 13, 2010. The one-year limitations period

7.

of Code of Civil Procedure section 340.6 applied to all causes of action except actual fraud, and this period expired on January 13, 2011, one year after counsel was relieved by order of the court. That was almost a year before the original complaint was filed on December 15, 2011. For the actual fraud cause of action, both the three-year limitations period for fraud and the four-year period for elder abuse had expired. The three-year period expired on May 27, 2009, and the four-year period on May 27, 2010. The court rejected plaintiffs' suggestion that the limitations period was tolled because of Kevorkian's mental state. It sustained Hurlbutt's objections to Kevorkian's evidence on this point and ruled that Kevorkian failed to raise a triable issue as to whether she was "insane" within the meaning of Code of Civil Procedure section 352.

As to Petersdorf, the court stated that her brief opposing the motion admitted that Kevorkian had incurred and acknowledged more than $20,000 in Hurlbutt's fees by May 27, 2006, and that Petersdorf did not dispute that Hurlbutt told her he was no longer representing her by April 13, 2006. Her causes of action accrued no later than the later of these two dates, so all of the arguable limitations periods—one year, three years, and four years—had expired by the time the original complaint was filed on December 15, 2011.

Finally, the court stated that, to the extent plaintiffs were claiming that Hurlbutt failed to provide professionally reasonable services, their claim was defeated by their failure to submit an expert declaration.

The appellate record does not include any judgment following the orders granting Hurlbutt's motions.

### DISCUSSION

I.     *Appealability*

It is settled that an appeal lies not from an order granting summary judgment but from the judgment that follows the order. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.) Because plaintiffs have failed to include the judgment in the appellate record and state that their appeal is from the orders granting Hurlbutt's

motions, this appeal is subject to dismissal. We have discretion, however, to decide the appeal instead of dismissing it, by deeming the orders to incorporate a judgment and interpreting the appeal as being from that judgment. (*Avila v. Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445.) Dismissing the appeal in this instance would serve no purpose and would cause delay, so we exercise our discretion not to do so. (See *Levy v. Skywalker Sound, supra*, at p. 761, fn. 7.)

## II.    *Standard of review*

Our review of the ruling on a summary judgment motion is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) We view the facts in the light most favorable to the nonmoving parties and assume that, for purposes of our analysis, their version of all disputed facts is correct. (*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 159.) We are not limited by the theory relied upon by the trial court in granting the motion and may base an affirmance on any correct theory applicable to the case. (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)

## III.    *Summary judgment motion:  merits*

A motion for summary judgment is framed by the issues presented in the pleadings. A defendant moving for summary judgment need only address issues raised in the complaint. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Omitting matters stricken because they pertained to the mediation, the issues raised in the amended complaint are as follows: (1) Hurlbutt committed intentional fraud and violated the Elder Abuse and Dependent Adult Civil Protection Act by (a) falsely promising to cap his fees at $20,000 and then billing and receiving more; (b) billing for work not performed; and (c) churning, i.e., performing work not reasonably necessary to carry out the representation. (2) Hurlbutt committed constructive fraud because he breached his professional duty to his clients by engaging in the above conduct. (3) Hurlbutt conspired with Broadman to perform unnecessary work.

Plaintiffs' opposition to the motions for summary judgment proffered no evidence of any of this conduct except the alleged fraudulent promise to cap fees, which is described in Kevorkian's declaration. Leaving the statute of limitations aside for the moment, we might have found a triable issue about that alleged promise, but for one thing: Plaintiffs never mentioned that promise in their response to Hurlbutt's separate statement of undisputed facts. A plaintiff opposing a motion for summary judgment is *required* to respond to the moving party's separate statement of undisputed facts and *must* include in that response a statement of facts claimed to be disputed:

> "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (Code Civ. Proc., § 437c, subd. (b)(3).)

The Court of Appeal applied these requirements in *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30-31. It stated: "'"This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*."'" [Citation.] Thus, [it does not matter whether a fact relied on by the

10.

nonmoving party appears elsewhere], because the statutory purposes [of Code of Civil Procedure section 473c] are not furthered by unhighlighted facts."

Plaintiffs failed to conform to these requirements in two ways: (1) They did not include in their separate statement the claim that Hurlbutt falsely promised to cap his fees—the only allegedly disputed fact that was both relevant to an issue raised in the complaint and supported by proffered evidence; and (2) they did not include in their separate statement any meaningful dispute of the facts claimed by Hurlbutt to be undisputed. For these reasons, we agree with the first conclusion in the trial court's orders: that plaintiffs did not show the existence of any triable factual dispute on the merits.

With respect to Petersdorf, there is an additional reason why the summary judgment motion was properly granted. It is undisputed that Hurlbutt never billed or received payment from Petersdorf. Plaintiffs' response to Hurlbutt's separate statement of undisputed facts stated that Kevorkian paid Hurlbutt on Petersdorf's behalf as well as her own, but plaintiffs never asserted that Kevorkian paid any invoices issued to Petersdorf or used Petersdorf's funds. All the invoices from Hurlbutt that are included in the appellate record are addressed to Kevorkian alone. All the allegations in the amended complaint (except those that were stricken) related to fees for Hurlbutt's services, so there are no disputed facts on the basis of which Petersdorf could prove any damages.

Finally, plaintiffs' appellate briefs address only the statute of limitations and do not challenge the trial court's conclusion that they did not succeed in raising triable facts on the merits. The challenge to that conclusion consequently is forfeited, and it is a matter of discretion that we address it at all. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

## IV. *Summary judgment motions: statute of limitations*

On the issue of the statute of limitations, the sole argument in plaintiffs' opposition to the motions was that the four-year period set forth in the Elder Abuse and

Dependent Adult Civil Protection Act applied. We agree with the trial court's conclusion that, assuming it applied, this period had expired as to Kevorkian by the time the original complaint was filed.

The cause of action for financial abuse of an elder or dependent adult accrued when plaintiffs discovered or with reasonable diligence should have discovered the facts constituting financial abuse. (Welf. & Inst. Code, § 15657.7.) It is undisputed that Kevorkian had been billed for and had paid more than $20,000 in Hurlbutt's fees by May 2006. In opposing the motions, plaintiffs proffered no evidence indicating that reasonable diligence could have uncovered the alleged injury only at a later time. Plaintiffs proffered no evidence that Hurlbutt churned or billed for unperformed work later than May 2006 (or at any other time). Allegations concerning later events—i.e., the 2009 mediation and settlement—were stricken from the complaint.

The limitations question is somewhat more complex with respect to Petersdorf, who was never billed and never made payments. Hurlbutt filed a substitution of attorney indicating his representation of Petersdorf in *In re Hazel J. Todd Living Trust* in 2005. In 2006 he told her he was no longer representing her, but he does not claim he ever obtained her consent or the court's leave to withdraw. So far as the appellate record discloses, Hurlbutt remained counsel of record for Petersdorf. If Code of Civil Procedure section 340.6 (with its provision tolling the running of the limitations period during an attorney's representation of a client) were held to apply at least to Petersdorf's cause of action for constructive fraud, then the complaint would be timely filed if Hurlbutt's representation were deemed to have lasted at least until December 15, 2010, one year before the filing date. As we have explained, however, the trial court correctly granted summary judgment against both plaintiffs on the merits, so we need not pursue this inquiry further.

The sole argument in plaintiffs' appellate briefs is that plaintiffs' causes of action accrued continuously during the period in which Hurlbutt billed Kevorkian, which lasted

until September 29, 2010. Plaintiffs say "each invoice and statement was a separate, recurring invasion of the same right, each of which triggers its own statute of limitations." They cite *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198, in which our Supreme Court explained that the continuous-accrual doctrine "is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct …." Plaintiffs contend that, under the continuous-accrual doctrine, the four-year limitations period set forth in the Elder Abuse and Dependent Adult Civil Protection Act began running on September 29, 2010, and still has not expired.

Plaintiffs did not raise the continuous-accrual doctrine or present any facts in support of it in their opposition to the summary judgment motions in the trial court. Consequently, as Hurlbutt argues, the issue is forfeited for two distinct reasons. First, we do not ordinarily consider issues raised for the first time on appeal. (*People v. Saunders* (1993) 5 Cal.4th 580, 590; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.) Second, as we have mentioned, parties opposing a motion for summary judgment cannot rely on facts they failed to highlight in their separate statement of disputed facts.

At oral argument, plaintiffs' counsel argued that plaintiffs could not avail themselves of the continuous-accrual doctrine in the trial court because the California Supreme Court had not yet declared that doctrine. In saying this, counsel apparently was referring to *Aryeh v. Canon Business Solutions, Inc., supra,* 55 Cal.4th 1185, which he cited in his opening brief, and which was decided after the trial court proceedings here. It is far from being the case, however, that the Supreme Court created the continuous-accrual doctrine in 2013. In *Aryeh,* the court reaffirmed a doctrine that was "long settled," citing its own cases going back to 1936. (*Id.* at p. 1198.)

At oral argument counsel also implied that he presented the continuous-accrual theory to the trial court and the trial court rejected it. Yet plaintiffs' papers opposing the summary judgment motions contain no reference to the doctrine, and counsel has not pointed to any place in the record where the court referred to it.

## *DISPOSITION*

The judgment is affirmed. Respondent Hurlbutt is awarded costs on appeal.

_____
Kane, J.

WE CONCUR:

_____
Levy, Acting P.J.

_____
Detjen, J.

14.