Filed 11/10/15  Pechin v. County of Kern CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WARREN PECHIN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>COUNTY OF KERN,<br><br>    Defendant and Respondent. | F068978<br><br>(Super. Ct. No. S-1500-CV-276443)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Darling & Wilson, Joshua G. Wilson and Jason R. Ekk, for Plaintiff and Appellant.

Theresa Goldner, County Counsel, Andrew C. Thomson, Deputy County Counsel, for Defendant and Respondent.

-ooOoo-

Warren Pechin, an architect, was hired by the Kern County Construction Services Division (county) in 2007 and fired in 2011.  He sued the county for age discrimination, whistleblower retaliation, and breach of contract.  The trial court granted the county's

motion for summary judgment, ruling that Pechin had failed to exhaust his administrative remedies. The court also stated that Pechin failed to carry his burden on the merits.

We agree with the court's ruling on the merits of the summary judgment motion and will not address the exhaustion issue. We affirm.

## FACTS AND PROCEDURAL HISTORY

Pechin filed his complaint in the superior court on April 23, 2012. It alleged that his job as a supervising engineer with the county Construction Services Division was designing projects for the county and supervising their construction. During his employment he "became concerned" that the county was "wasting taxpayer dollars" because other county agencies could have obtained architectural services more cheaply from private firms than from the Construction Services Division. He brought Pechin's concerns to the attention of his supervisors and suggested that changes be made to the division's methods and billing practices. County employees Mark Russell and Jeff Frapwell responded to his concerns by retaliating against him. A pretextual reason for firing him was developed: The county falsely accused Pechin of working on outside projects during working hours. In reality, he worked on his outside projects only during nonworking hours, breaks, or "'comp' time." The county terminated Pechin's employment on September 21, 2011.

The complaint stated that when Pechin was fired, he was 66 years old. He was replaced by a younger employee with a lower salary. Russell and Frapwell "allowed other employees" to call Pechin "'[v]iejo'" and "'senile.'" Pechin alleged that the county "ha[s] a policy of replacing older employees in the Construction Services Division with younger employees" to save money on pay and benefits.

The complaint stated that Pechin filed a charge of age discrimination and wrongful termination in violation of public policy with the Department of Fair Employment and Housing (DFEH). DFEH issued a right-to-sue letter. Pursuant to the Government

Claims Act (Gov. Code, § 810 et seq.), Pechin also submitted a claim to the county, which the county rejected.

The complaint alleged three causes of action. The first was wrongful termination in violation of public policy, based on the claim that the county fired Pechin in retaliation for his complaints about money being wasted. (This is the whistleblower claim.) The second was breach of contract, based on the notion that Pechin and the county entered into an implied employment contract according to which the county would terminate Pechin only for good cause. The third cause of action was age discrimination in violation of Government Code section 12940, subdivision (a). The complaint prayed for damages and attorneys' fees.

The county filed its motion for summary judgment on August 16, 2013. In response to the age discrimination and whistleblower retaliation claims, the county asserted that Pechin was fired for legitimate reasons. In support of this assertion, the county submitted a letter written to Pechin by Mark Russell, who was manager of the Construction Services Division, dated August 5, 2011.

The letter stated that Russell was proposing to terminate Pechin's employment due to Pechin's misconduct. Russell detailed numerous improper acts by Pechin involving unapproved outside work and the misleading of Russell and Frapwell. According to the letter, Pechin was involved in a number of outside projects with a structural engineer named Kevin Harrel. Some of these projects involved county facilities, but Pechin never informed his supervisors of his involvement, contrary to county rules. At the same time, Pechin was the manager responsible for approving Harrel's proposed fees on county projects. In one instance, Pechin recommended a $20,350 increase in Harrel's fees on one project. When pressed to explain, Pechin admitted he was trying to obtain payment for Harrel's work on a different project, work Pechin had approved without permission and then hidden from his superiors. In another instance, Pechin tried to obtain payment for his own unapproved outside work on a county project by causing Harrel to submit a

3.

$2,450 bill for architectural work actually done by Pechin. At one point, Frapwell ordered Pechin not to be involved in any projects with Harrel while Frapwell sought the opinion of the County Counsel on whether Pechin's involvement with those projects created a conflict of interest. Within days, Pechin disobeyed these instructions by participating in a meeting at one of Harrel's construction sites. On his time sheet, Pechin falsely recorded the time spent at the Harrel site as time for county work performed elsewhere.

Pechin also approved the time sheet of a subordinate showing county work time for a period when, in reality, the subordinate was doing outside work for Pechin. Another subordinate was found, during working hours, retrieving and copying documents for one of Pechin's outside projects.

Russell wrote that Pechin once submitted paperwork for a building permit for one of his private clients, but indicated that the county was responsible for paying the permit fee. County accounting staff had to spend time to confirm that the fee was not to be paid by the county.

Russell's letter also described several instances in which Pechin failed to obey Russell's instructions or adhere to office policies. Once, without informing his superiors, he approved work encroaching on neighboring property, leading to a need for costly alterations. He refused to use scheduling software that had been deployed in the office, making it hard for other employees to find him and schedule meetings with him. He missed a meeting because of his failure to use the software. Pechin also refused to use a county car when traveling during the work day. County cars were equipped with GPS devices. Russell believed that Pechin refused to use the software and the county car to avoid having his activities and whereabouts monitored during working hours.

Russell also wrote that he had received complaints regarding Pechin's treatment of female staff. Women employees had reported that Pechin excluded them from meetings

4.

and used demeaning language when speaking to them. Russell believed this conduct created a risk of liability.

Russell's letter included several additional points. Pechin accompanied an outside client to a meeting with county planning staff during working hours but did not ask for time off or report time off on his time sheet. Other employees observed him scheduling meetings with his private clients on his work phone at his desk. Pechin did not disclose or obtain permission for various outside projects. He asked staff members not to bring any of their concerns to Russell. Pechin wrote a letter to the head of the fire department complaining about a fire department employee instead of channeling his concerns through his own superiors.

Russell's letter listed several grounds for termination under the county's Civil Service Commission rules. These included insubordination, dishonesty, and acts constituting a conflict of interest.

The county's motion papers included a letter Pechin wrote in response to Russell's letter. Pechin replied to Russell's contentions point by point, generally claiming the conduct described by Russell was innocent. For instance, Pechin wrote that he fulfilled his obligation to notify the county about outside work by submitting an annual form; the county had no authority to order him to avoid involvement with Harrel's projects; and the county's interests had not been harmed by Pechin's involvement in those projects. When Pechin asked staff not to bring concerns to Russell, he only meant they should not bother Russell with petty problems. If Pechin ever did outside work during office hours, he made up the time during breaks or at the end of the day. The request to have a private client's permit fee paid by the county was an error caused by an employee of the county's Building Inspection Department. The women employees who had complained of gender bias were themselves to blame for the problems they described. Pechin's employee evaluations had been consistently outstanding.

In addition to the argument that Pechin was fired for legitimate reasons, the county's motion also contended Pechin's whistleblower claim was meritless because Pechin did not allege that he had reported a violation of law. The county cited Labor Code section 1102.5, which prohibits retaliation against an employee who reports information that "discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation .…" (Lab. Code, § 1102.5, subd. (b).)

On the breach-of-contract claim, the county's motion argued that a public employee's rights in California are governed by statute, and such an employee cannot have contract rights in conflict with the governing statutes.

The county's motion further argued that summary judgment should be granted for procedural reasons. After receiving Russell's letter proposing termination, Pechin requested and received a hearing before a county hearing officer. The hearing took place on August 29, 2011. The hearing officer found Russell's allegations true and deemed Pechin terminated as of September 20, 2011. Citing *Miller v. City of Los Angeles* (2008) 169 Cal.App.4th 1373, the county argued to the trial court that, having opted to participate in the hearing before the hearing officer, Pechin was barred from filing a civil action until after he exhausted his administrative and judicial remedies by filing an administrative appeal and, if unsuccessful, filing a petition for a writ of administrative mandate in the superior court. Since Pechin never did this, the hearing officer's decision had collateral estoppel effect, which also barred the suit.

As evidence in support of this procedural argument, the county submitted declarations by county employee Matthew Constantine, who was the hearing officer, and by Deputy County Counsel Kendra Graham, who represented the county at the hearing. The declarations stated that the hearing took place and evidence was taken. The county's motion papers also included the hearing officer's written decision.

6.

In his opposition to the county's motion, Pechin agreed it was undisputed that Russell gave him the letter proposing his termination, he submitted his responsive letter, and the hearing before Constantine took place, leading to the final decision to terminate him. Pechin argued, however, that the county failed to carry its burden of presenting evidence in support of its argument that it terminated him for legitimate reasons. He claimed the county had "not provided any evidentiary facts in support of the reasons for the termination." Pechin did not, however, explain how the evidence the county submitted (i.e., Russell's letter, Constantine's written decision, and the declarations by Constantine and Graham) was deficient.

The evidence Pechin submitted to support his claims consisted of his own six-paragraph declaration. Regarding age discrimination, the declaration stated that when he was fired he was 66 years old. On August 8, 2011, three days after Russell gave Pechin the letter proposing Pechin's termination, an employee "at least 15-20 years younger" than Pechin was hired by the Construction Services Division. After a probationary period, this employee became a supervising engineer, which was Pechin's title as well. Further, four other employees "referred to [Pechin] in terms that discriminated against [him] on the basis of [his] age." The terms they used "included calling [Pechin] 'senile' and 'viejo,' which is a Spanish word meaning 'old man.'" All four of these employees were women who were mentioned either in Russell's letter or in Pechin's response in connection with the complaints of gender bias on Pechin's part.

On whistleblower retaliation, Pechin's declaration stated that in late 2010, Pechin began complaining to Russell and an employee of the county's fire department that Pechin's agency, the Construction Services Division, was charging other county agencies "exorbitant" fees for architectural and engineering services. These fees were 18 to 24 percent of project costs, compared with 8 to 10 percent typically charged by private firms for these services. Pechin told Russell and the fire department employee that taxpayer

7.

funds were being wasted because of this. Russell and Frapwell began accusing Pechin of improper behavior after this.

Pechin's opposition to the motion also argued that he did everything necessary to exhaust his administrative remedies. He submitted a claim to the DFEH and, in response, obtained a right-to-sue letter. A copy of the right-to-sue letter was included with Pechin's opposition papers. He argued that there was no need to file an administrative appeal or a petition for a writ of administrative mandate because the hearing in which Pechin participated was not "a full evidentiary hearing before a Civil Service Commission."

Pechin did not attempt to overcome the county's arguments on the breach-of-contract claim. That claim is mentioned nowhere in Pechin's memorandum of points and authorities or in his separate statement of disputed and undisputed facts.

The trial court agreed with the county, both on the procedural issue and on the merits. It granted the motion in its entirety.

### ***DISCUSSION***

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)

The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) We view the facts in the light most favorable to the nonmoving party and assume that, for purposes of our analysis, his version of all disputed facts is correct.

8.

(*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 159.)

A moving defendant can establish its entitlement to summary judgment by either (1) demonstrating that an essential element of the plaintiff's case cannot be established or (2) establishing a complete defense. (Code Civ. Proc., § 437c, subd. (o).)

## I.      *Age discrimination*

For purposes of FEHA discrimination claims, California courts use the three-stage, burden-shifting test adopted by the United States Supreme Court for federal discrimination claims in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 353 (*Guz*).) At trial, the plaintiff first has the burden of making a prima facie case of discrimination. (*Id.* at p. 354.) If he or she does so, a presumption of discrimination arises and the burden shifts to the defendant to rebut the presumption by producing evidence that the action was taken for a nondiscriminatory reason. (*Id.* at pp. 355-356.) If this happens, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext or to show discrimination in some other way. The plaintiff has the ultimate burden of persuading the finder of fact that discriminatory conduct took place. (*Id.* at p. 356.) For an age-discrimination claim, a plaintiff can establish a prima facie case by showing (1) the defendant took an adverse employment action against the plaintiff; (2) the plaintiff was 40 or older at the time of the action; (3) the plaintiff was performing his or her job satisfactorily at the time of the action; and (4) the plaintiff was replaced by a significantly younger person. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1002-1003.)

A defendant's motion for summary judgment can properly be granted, even when the plaintiff produces evidence sufficient to establish a prima facie case, if the plaintiff's evidence is too weak to support an inference of discrimination in light of the defendant's evidence of a nondiscriminatory basis for the action. (*Guz, supra*, 24 Cal.4th at pp. 361-

362.)  "'Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case ....'"  (*Id.* at p. 362 [quoting *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 148-149].)  "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory."  (*Guz, supra*, at p. 361.)

In this case, the evidence supporting a finding of discrimination is weak, and the evidence of nondiscriminatory reasons for the termination is strong.  Pechin denied he did anything wrong, but he did not deny that he and his superiors had a series of disagreements over his outside projects, and that instead of acting to address their concerns, he denied their authority to control him.  The undisputed fact that Pechin was hired only four years before his termination further undermines the inference that he was discriminated against based on his age.  Pechin's evidence that other, nonsupervisory employees called him names does little, under these circumstances, to support an inference of discrimination.  There is no evidence that Pechin's superiors were ever made aware of the name calling, let alone any evidence that they shared in any discriminatory animus the name callers might have harbored.

Pechin contends that Russell's letter of August 5, 2011, is "at best ... the conclusory opinion of [a] third party" and is "not evidence [of] what Pechin did or didn't do."  He suggests that Russell's statements are merely a report of his interviews with other employees.  Many of the statements in Russell's letter are based on Russell's first-hand interactions with Pechin, however.  Moreover, much of the substance of Russell's letter is confirmed by Pechin's responsive letter of August 12, 2011.  For instance, Pechin's letter confirms the existence of his outside work, maintains there was no impropriety, and denies the authority of the county to direct him to stay away from his

10.

outside projects. The letter disputes the claims of impropriety regarding his outside projects, but it confirms that he engaged in outside work, that he had a disagreement with his superiors over that work, and that he did not submit to their authority in the matter. It is undisputed, in other words, that Pechin and his superiors were quarreling over Pechin's outside work and he was not changing his behavior to their satisfaction. This is evidence of a nondiscriminatory reason for the county's decision to terminate his employment, and it is much stronger evidence than Pechin's bare-bones prima facie case of age discrimination. Under the standards set out in *Guz*, the evidence as a whole is insufficient to permit a rational inference of a discriminatory motive.

For these reasons, we conclude the trial court was correct in its determination that Pechin's age-discrimination claim does not present a triable issue of material fact.

## II.  *Whistleblower retaliation*

In the complaint, Pechin alleged that he told his supervisors the Construction Services Division was charging other county departments too much for its services. The complaint went on to say Pechin was fired for saying this, and the firing consequently "constitutes wrongful termination as set forth in Government Code [section] 12940." Government Code section 12940 lists employment practices deemed unlawful by the FEHA.

The alleged facts, if true, would not constitute a violation of Government Code section 12940. The anti-retaliation provisions of that section prohibit retaliating against an employee who has opposed, complained of, testified about, or participated in a proceeding related to discrimination under the FEHA (Gov. Code, § 12940, subd. (h)) or who has made a report pursuant to Penal Code section 11161.8 regarding patient abuse by health facilities (Gov. Code, § 12940, subd. (g)). Pechin never claimed he did any of those things.

Another statute, Labor Code section 1102.5, prohibits retaliation against an employee who reports information and "has reasonable cause to believe that the

information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation ….” (Lab. Code, § 1102.5, subd. (b).) Pechin never claimed he reported any such violation.

In its motion for summary judgment, the county pointed out that the facts alleged in the complaint are not actionable under these laws. In his opposition to the motion, Pechin added details to his assertion that he had informed his superiors of his view that the Construction Services Division charged too much, but he did not claim or produce any evidence that he reported a law violation or opposed or complained of discrimination.

In his briefs on appeal, Pechin does not argue that he ever claimed or produced evidence that he was fired for opposing discrimination or reporting a violation of law. He also does not attempt to explain how the facts he has adduced might support a retaliation claim based on some authority other than Government Code section 12940 or Labor Code section 1102.5.

In light of the foregoing, we can only conclude that the trial court was correct in finding that Pechin failed to raise a triable issue of material fact on his claim of whistleblower retaliation.

## III. *Breach of contract*

The trial court held that the county was entitled to judgment on the breach-of-contract claim because public employment in California is not held by contract; its terms are instead governed by statute. (See *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1181-1182; *Olson v. Cory* (1980) 27 Cal.3d 532, 537-538.) In his briefs in this appeal, Pechin makes no attempt to support the merits of his breach-of-contract claim. Consequently, he has forfeited the issue. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 [points not supported by analysis of facts and citation of legal authority are deemed forfeited].)

# *DISPOSITION*

The judgment is affirmed.  Costs on appeal are awarded to the county.

_____

Smith, J.

WE CONCUR:

_____

Poochigian, Acting P.J.

_____

Franson, J.